# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAIMARIA BODOR,<br>individually and on behalf of all others<br>similarly situated,<br>　　　　　　　　　　Plaintiff,<br>　　　vs.<br><br>MAXIMUS FEDERAL SERVICES, INC.,<br>　　　　　　　　　　Defendant. | CIVIL ACTION<br><br>NO.  5:19-cv-05787 (JMG) |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO UNSEAL SUMMARY JUDGMENT RECORD**

## I.   INTRODUCTION

Because of the strong, longstanding presumption in favor of public access to court documents, the Court is required to conduct a document-by-document review to determine the propriety of sealing. Maximus knows this. Plaintiff advised Maximus of this requirement in her Motion to Unseal, and then again during a meet and confer held before Maximus filed its opposition.[1] Yet Maximus chose to file a conclusory Opposition that fails to specifically identify a *single* document that deserves sealing.  Instead, Maximus categorizes the documents it seeks to seal in broad strokes, necessarily precluding the Court from conducting the required document-by-document inquiry.  Plaintiff and the Court are left to speculate what documents Maximus specifically seeks to withhold from the public record.[2]

Maximus chose to identify vague categories of documents "[i]n lieu of identifying each document in the Joint Appendix," (Def.'s Br. at p. 4, n.3), because it cannot proffer an adequate

---

[1]　　(Ex. 1, Declaration of Lopez-Jacobs ¶ 7.)

[2]　　The two exceptions, perhaps, are the General Brown letter and DOE's annual contract reviews that Maximus seeks to withhold from the public record to avoid reputational injury, which is insufficient. *See infra* § II.C.

justification to seal any individual document in the set.  As the party seeking a seal, Maximus had

the burden of showing the propriety of sealing each specific document it wanted to seal. *Larry Pitt*

*& Assocs. v. Lundy L., LLP*, 346 F. Supp. 3d 761, 767 (E.D. Pa. 2018) ("The party seeking to

overcome the presumption of access bears the burden of showing . . . with 'specificity' that the

portion of the record it seeks to keep from the public contains the type of information courts protect

and that its 'disclosure will work a clearly defined and serious injury to it.").  Having chosen to

withhold identification of the documents it seeks to seal in its initial Motion to Seal (ECF 61), and

then again it its Opposition to Plaintiff's Motion to Unseal (ECF 78), Maximus necessarily fails to

meet its burden.   Additionally, the evidence Maximus relies upon to support sealing these

categories of documents falls far short of demonstrating that these documents must be concealed

from the public.  Plaintiff's Motion to Unseal the Summary Judgment Record and briefing should

be granted and public access to this class action case should be restored.

## II.   ARGUMENT

### A. Maximus's choice to withhold identification of specific documents that must remain sealed is itself sufficient to lift the seal

Maximus contends that Plaintiff has the burden of identifying documents that should be

unsealed.  (Def.'s Br. at 6.)  This is plainly incorrect.

As the party seeking a seal, Maximus has the "heavy burden" of showing the propriety of

sealing each document it seeks to conceal from the public. *Miller v. Indiana Hosp.*, 16 F.3d 549,

551 (3d Cir. 1994); *Larry Pitt & Assocs.*, 346 F. Supp. 3d at 767. For documents to be sealed,

Maximus must show that disclosure of each such document "will work a clearly defined and

serious injury to the party seeking closure." *In re Avandia Mktg., Sales Practices & Prod. Liab.*

*Litig.*, 924 F.3d 662, 672 (3d Cir. 2019). In accordance with that well-established rule, the

Protective Order specifically advised Maximus that in moving to seal, it must "demonstrate[e] with

particularity that each document or portion thereof that the party seeks to seal meets the legal standard for sealing." (ECF 39 ¶ 9.a.)  Maximus's initial motion undeniably violated the Protective Order, and its Opposition to Plaintiff's Motion to Unseal fails to remedy that violation.

Instead of specifying any specific document worthy of sealing, Maximus chose to describe four broad categories of documents and information for sealing. (Def.'s Br. at p. 4.)  The categories themselves are unclear and ambiguous.  The first and second categories listed, which refer to "DMCS System's policies and procedures" and "[r]eference[s]" to Maximus's "Internal Policies and Procedures," could refer to any number of documents. (*Id.*) Maximus has produced several documents that might potentially constitute such policies and procedures—some designated as confidential, and others not. Plaintiff and the Court are left to speculate what documents Maximus believes are policies and procedures worthy of protection.

The remaining categories are hopelessly overbroad, using the unbounded terminology of any reference, communication, or information "relating to" certain subject matters. (*Id.*)  Again, Plaintiff and the Court can only speculate what this would encompass.  Maximus apparently expects the Court to undertake the onerous task of sifting through the 1,000-plus pages of the Joint Appendix and the summary judgment briefing to identify the applicable documents, references, and information—a task Maximus has now chosen not to do at least twice (once in filing its perfunctory Motion to Seal (ECF 61) and again in filing its Opposition to Plaintiff's Motion to Unseal (ECF 78)).

As Plaintiff noted in her Motion to Unseal, the sealing analysis requires a document-by-document review.  The Third Circuit has held that the failure to undertake such a review is error. *In re Avandia*, 924 F.3d at 677 (district court "erred by not conducting a document-by-document review, instead analyzing sixty-five disputed documents in a single paragraph contained

3

in a footnote"). And it is well accepted that neither the Court nor the opposing party is required to do the work of rooting through the record when the party seeking the seal itself declined to do so. *See, e.g.*, *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 (3d Cir. 2006) ("Judges are not like pigs, hunting for truffles buried in' the record"). Thus, Maximus's decision to refrain from identifying documents it seeks to seal necessarily prevents the Court from engaging in the required analysis.[3]

In sum, by failing to identify the documents to be sealed, despite numerous opportunities to do so, Maximus has failed to carry its heavy burden to overcome the strong presumption in favor of public access. The summary judgment record should be unsealed.[4]

**B. Maximus's blanket confidentiality designations have no bearing on whether the summary judgment record can be concealed from the public**

During discovery, Maximus made blanket confidentiality designations to hundreds of pages of documents, as reflected by the Joint Appendix. Maximus implies that Plaintiff's decision to withhold contemporaneous objections is somehow relevant to the sealing analysis. (Def.'s Br. at p. 3, n.2, & p. 6.) This argument squarely conflicts with the plain language of the Protective Order and the law.

---

[3]     Maximus also implies that the Court may render what would essentially be an advisory opinion on the propriety of sealing these unidentified documents, after which the parties would "meet and confer" regarding the propriety of redactions. (Def.'s Br. at p. 4, n.3.) Maximus cites no case law for this unorthodox procedure. In any event, this Court is without power to issue an advisory opinion on a hypothetical set of facts. *See, e.g.*, *Const. Party of, Penn. v. Cortes*, 712 F. Supp. 2d 387, 397–98 (E.D. Pa. 2010) (rejecting invitation to render advisory opinion, which "would be based on a hypothetical set of facts, without sufficient information to support findings").

[4]     As Plaintiff noted in her Motion to Unseal, Plaintiff's tax return (JA-00436 – JA-00535) is the only document entitled to sealing because of the sensitive personal information it contains. (Pl.'s Motion to Unseal at pp. 5-6.)

As a preliminary matter, courts agree that a party's unilateral confidentiality designation does not impact the Court's inquiry into whether records may be sealed. *See Larry Pitt & Assocs.*, 346 F. Supp. 3d at 768 ("mere reliance on the Stipulated Confidentiality Agreement and Protective Order . . . is not sufficient"); *Reilly v. Vivint Solar*, No. 16-09446, 2021 WL 248872, at *5 (D.N.J. Jan. 26, 2021) ("just because a document is marked confidential and subject to a protective order, does not automatically mean a document can be sealed"); *Brooks v. Wal-Mart Stores, Inc.*, No. 18-1428, 2020 WL 1969937, at *7 (D.N.J. Apr. 24, 2020) ("to the extent [the movant's] motion suggests the existence of a confidentiality order mandates sealing, that motion fails").

In any event, Maximus's account of the Protective Order is misleading and inaccurate. To facilitate the exchange of discovery, and at the insistence of Maximus, Plaintiff agreed to the Protective Order (ECF 39). Contrary to Maximus's representation to the Court, however, Plaintiff did not—and still does not—believe that any discovery materials "would result in damage to Maximus Federal's business or contractual relationship if disclosed." (Def.'s Br. at 2.)

Moreover, the Protective Order, in accordance with the case law, does not permit one side to unilaterally *seal* the record. Instead, it appropriately recognizes that marking of a document as confidential is merely a one-sided, subjective judgment call by the party producing the documents. The Protective Order allowed the parties to mark documents as confidential in good faith, (ECF 39 ¶ 4.1); however, it makes clear that "neither this Order nor any confidentiality designation pursuant to it constitutes a ruling by this Court that any specific information is, in fact, confidential," (*id.* ¶ 1).

Although the Protective Order provides a mechanism for challenging improper confidentiality designations, a party "does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is

5

disclosed." (*Id.* ¶ 5.1.)  Instead, the Protective Order affords the parties the choice to challenge a

designation at their discretion. (*Id.* ¶ 5.2 ("A Party ***may*** challenge the designation of a document

or other material as Confidential as follows . . . ." (emphasis added)).)  Further, the Protective

Order provides, "Neither this Order, nor any confidentiality designation under it, is a sufficient

basis for sealing court records." (*Id.* ¶ 9.)  Maximus's subjective and unilateral confidentiality

designations are simply irrelevant to the sealing inquiry.

### C. Maximus's conclusory evidence fails to establish the propriety of continued sealing of the summary judgment record

Maximus's claimed justifications lack merit and are not supported by the record in this

case.  First, Maximus contends—without citation to any evidence—that the DMCS policies and

procedures refer to information owned by FSA that is "undoubtedly proprietary in nature" (Def.'s

Br. at 7).  But "[d]ocuments do not contain trade secrets merely because a party has deemed them

to be confidential." *Larry Pitt & Assocs.*, 346 F. Supp. 3d at 768.  It was incumbent on Maximus

to produce evidence showing that the policies were proprietary and would cause a clearly defined

injury if disclosed.  The ipse dixit of counsel is not evidence. *Valido-Shade v. Wyeth LLC*, No. 12-

20003, 2014 WL 4794967, at *2 (E.D. Pa. Sept. 26, 2014) ("It is a well-settled principle that the

court does not consider an attorney's factual assertions in a brief to be a part of the record unless

these facts are stipulated to or are a matter of public record.").

Further, it is not at all clear why dated debt collection policies and procedures, which

presumably speak to how business operations worked in 2018/2019, would warrant protection

from disclosure in 2021. Courts recognize that "[t]he purported need for protection is substantially

diminished where the passage of time has made such documents stale." *Larry Pitt & Assocs.*, 346

F. Supp. 3d at 767 (citing cases); *accord Peters v. Univ. of Pittsburgh*, No. 18-732, 2019 WL

109402, at *4 n.5 (W.D. Pa. Jan. 4, 2019) (unsealing records, citing cases).

Indeed, it appears that the Department of Education has publicly disclosed much about its inner workings on the subject matter of this case.  Maximus states that it "is currently engaged in a [sic] submitting a bid for the Department of Education Interim Servicing Solution." (ECF 78-1, Lindbloom Declaration ¶ 4.)[5] In connection with the "Interim Servicing Solution" contract opportunity, the Department of Education has publicly disclosed no less than 248 files detailing its policies and procedures as it relates to DMCS, BD requests, and other related matters. (Ex. 1, Lopez-Jacobs Declaration ¶ 4.) For example, a document entitled "01 - Business Operations Servicing Requirements" details several obligations of the servicer in processing BD requests, including the propriety of stopping collections in connection with a BD request:

| 23018.020 | The servicer shall accept and apply requests to remove any forbearance or stopped collections from a borrower's loan(s). |
|---|---|

(*Id.* ¶ 5.)  Several documents appearing to detail specific DMCS protocols were also disclosed. (*Id.* ¶ 6.) In the accompanying Declaration, Plaintiff provides copies of these voluminous set of documents by Dropbox links. (*Id.* ¶¶ 4-6.)  The Department of Education's publication of these materials further dispels the notion that any information in the summary judgment record is confidential.

Second, Maximus contends certain information disclosed might be "used by its competitors."  (Def.'s Br. at 7.) But the examples Maximus provides show that Maximus's real concern is not any proprietary property interest, but its reputation. Maximus references:

- "assessments and communications from the DOE relating to Maximus Federal's performance under the terms of the Contract";

- "DOE's annual contract review";

---

[5]    This statement is misleading, as the bidding period has closed. (Ex. 1, Lopez-Jacobs Declaration ¶ 3, referring to Ex. A thereto.)

- "the October 9, 2019 letter from General Brown"

(Def.'s Br. at 7.)  Maximus's interest in protecting its reputation does not warrant sealing. Our Court of Appeals has "repeatedly said that concern about a company's public image, embarrassment, or reputational injury, without more, is insufficient to rebut the presumption of public access." *In re Avandia*, 924 F.3d at 676. Other Courts of Appeal are in accord, including the Fourth Circuit, which acknowledged that the right of access does not yield to a business's reputational interests:

> A corporation very well may desire that the allegations lodged against it in the course of litigation be kept from public view to protect its corporate image, but the First Amendment right of access does not yield to such an interest. . . . [W]hether in the context of products liability claims, securities litigation, employment matters, or consumer fraud cases, the public and press enjoy a presumptive right of access to civil proceedings and documents filed therein, notwithstanding the negative publicity those documents may shower upon a company.

*Doe v. Pub. Citizen*, 749 F.3d 246, 269 (4th Cir. 2014) (internal citations omitted).

Maximus's witness, Ms. Lindbloom, provides only generalized and conclusory assertions of harm. She states—without identifying any one document specifically—that "Maximus Federal ***could*** suffer a clearly defined, substantial, and specific harm," including "damage to business relationships" and "commercial standing," (ECF 78-1, Lindbloom Declaration ¶ 10 (emphasis added)).  First, this speculative assertion of *potential* harm does not suffice. *See In re Avandia*, 924 F.3d at 679 ("These blanket assertions of harm that 'could' come to fruition fall short of the clearly defined and serious injury that GSK must articulate to obtain sealing under any standard.").  Second, allegations of harm to "business relationships" and "commercial standing" are merely ways of restating reputational harm, which is insufficient to rebut the presumption. *See id.* at 676.

The cases Maximus relies upon are inapposite.  For instance, in *Goldenberg*, the Court found it significant that "the parties have previously agreed that these specific documents are

8

confidential and if released to the public would cause FSC/SunAmerica Defendants serious injury." *Goldenberg v. Indel, Inc.*, No. 09-5202, 2012 WL 15909, at \*2 (D.N.J. Jan. 3, 2012).  No such agreement exists here.

In *Zenith*, the court considered whether a protective order precluding the public disclosure of certain documents was "a constitutionally valid protective order," *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 914 (E.D. Pa. 1981). The constitutionality of the Court's Protective Order is not at issue here.

In *Publicker*, our Court of Appeals noted in passing that disclosure *might* work a clearly defined and serious injury in the case of a trade secret, but only "where there is a sufficient threat of irreparable harm." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984).  Here, Maximus has neither alleged nor proved irreparable harm.

\*      \*      \*

Maximus's unsupported request to effectively seal the entire Summary Judgment record in this class action, which affects thousands of consumers, cannot overcome the longstanding and respected principles in favor of public access.  As the Fifth Circuit recently explained, the interests served by public disclosure are threefold:

> (1) the public has a right to monitor the exercise of judicial authority; (2) judges are "the primary representative[s] of the public interest in the judicial process"; and (3) the judiciary's institutional legitimacy depends on public trust. Public trust cannot coexist with a system wherein "important judicial decisions are made behind closed doors" and, worse, private litigants do the closing.

*Binh Hoa Le v. Exeter Fin. Corp.*, No. 20-10377, 2021 WL 838266, at \*6 (5th Cir. Mar. 5, 2021) (footnotes omitted). "The secrecy of judicial records . . . must be justified and weighed against the

presumption of openness that can be rebutted only by compelling countervailing interests favoring nondisclosure." *Id.* at *8.  Maximus has made no such showing here.[6]

### III.   CONCLUSION

Maximus has consistently failed to meet its burden of showing that any particular document in the summary judgment record would work a clearly defined and serious injury if disclosed. Plaintiff's Motion to Unseal should be granted.

Date:  3/19/2021

<div style="text-align:right">

*/s/ Jody T. López-Jacobs*
JODY T. LÓPEZ-JACOBS
**FLITTER MILZ, P.C.**
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(P) (610) 668-0011
jlopez-jacobs@consumerslaw.com

Stuart T. Rossman
Persis Yu
**NATIONAL CONSUMER LAW CENTER**
7 Winthrop Square, 4th Floor
Boston, MA 02110
(617) 542-8010 tel.
srossman@nclc.org
pyu@nclc.org

Alice Buttrick
**JUSTICE CATALYST LAW, INC.**
81 Prospect Street
Brooklyn, NY 11201
(518) 732-6703 tel.
abuttrick@justicecatalyst.org

**Counsel for Plaintiff and the Putative Class**

</div>

---

[6]   Maximus implies in footnote 1 that even if the Joint Appendix is unsealed, the documents could still be omitted from the public docket without violating the right of access.  But the public has a right to view the unsealed evidence attendant to Defendant's motion for summary judgment and the Court's opinion because scrutiny of such evidence "provide[s] the public with a more complete understanding of the judicial system and a better perception of its fairness." *In re Avandia Mktg.*, 924 F.3d at 677. Once the record is unsealed, the parties—with the Court's guidance—can work out any technological and/or administrative issues attendant to filing unsealed evidence, whether through ECF or otherwise.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAIMARIA BODOR,<br>individually and on behalf of all others<br>similarly situated,<br><div align=right>Plaintiff,</div><br>vs.<br><br>MAXIMUS FEDERAL SERVICES, INC.,<br><div align=right>Defendant.</div> | CIVIL ACTION<br><br>NO.  5:19-cv-05787 (JMG) |

I, Jody T. Lopez-Jacobs, do hereby certify that a copy of the foregoing was served upon all counsel of record by CM/ECF electronic filing.

Date:  3/19/2021

/s/ Jody T. López-Jacobs
JODY T. LÓPEZ-JACOBS
**FLITTER MILZ, P.C.**
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(P) (610) 668-0011
(F) (610) 667-0552
jlopez-jacobs@consumerslaw.com
**Counsel for Plaintiff and the Putative Class**

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAIMARIA BODOR,<br>individually and on behalf of all others<br>similarly situated,<br><div align="center">Plaintiff,</div><br>vs.<br><br>MAXIMUS FEDERAL SERVICES, INC.,<br><div align="center">Defendant.</div> | CIVIL ACTION<br><br><br>NO.  5:19-cv-05787 (JMG) |

**DECLARATION OF JODY T. LÓPEZ-JACOBS IN SUPPORT OF
REPLY TO MOTION TO UNSEAL SUMMARY JUDGMENT RECORD**

1.      I represent Plaintiff Jaimaria Bodor and the putative class of student loan borrowers in the above-captioned matter.  This Declaration is submitted in connection with Plaintiff's Reply in Support of Motion to Unseal.

2.      The Declaration of Niev Lindbloom, attached as Exhibit A to Defendant's Opposition (ECF 78), states at paragraph 4 that "Maximus Federal is currently engaged in a [sic] submitting a bid for the Department of Education Interim Servicing Solution."

3.      On March 17, 2021, I searched for "Interim Servicing Solution" on the United States government website beta.SAM.gov, which I understand to be a depository for, among other things, active and inactive government contract opportunities and documents associated therewith.  A screenshot of the beta.SAM.gov webpage for "Interim Servicing Solution" is attached as **Exhibit A**.  The Interim Servicing Solution contract opportunity is no longer active—the bidding period has closed.

4.      This particular contract opportunity had "attachments" that were accessible to the public.  I downloaded those attachments and saved the exact copies of them at the following Dropbox link:

https://www.dropbox.com/sh/6bk351hpg7wvrs6/AADDkSnQj4rzwAr3ql_ZJRHUa?dl=0.  I did

not undertake to review each and every file therein, as there were a total of 248 files therein.

     5.     One of the documents is an excel spreadsheet entitled "01 - Business Operations

Servicing Requirements."  It appears to detail several obligations of the servicer in processing

BD requests, including the propriety of stopping collections in connection with a BD request, as

depicted below:

| 23018.000 | The Servicer shall process Borrower Defense Discharges<br><br>See Attachments:<br>23018_Servicer Ineligible Instructions V7b<br>23018_Adhoc Instructions V16<br>23018_Approved Examples V6<br>23018_Appr QuestionsResponse V10<br>23018_Appr RequestResponse V3<br>23018_Servicer Letter_01_BD Discharge Notice_Above 0_approved_021220<br>23018_Servicer Letter_02_BD Discharge Notice_Equal to 0_approve_022120<br>23018_Servicer Letter_04_BDApprovedNoLoans_ReceivedInterestCredit_approved_042020 |
|---|---|
| 23018.010 | **The servicer shall accept and apply requests to put a borrower's loans into forbearance or stopped collections.** |
| 23018.011 | The request to apply a forbearance/stopped collections may be received via the CEMS platform or via email request from FSA. |
| 23018.012 | The servicer shall apply a non-capping Administrative forbearance to non-defaulted loans covering/ resolving any prior delinquency (to bring current) and remain on forbearance until FSA instructs the servicer to remove the forbearance (once the borrower defense application has been decided/resolved). If the borrower is currently in deferment (or in $0.00 IDR plan) the borrower shall remain in that deferment/ plan but if that deferment/ plan ends prior to FSA instructing the servicer to remove the forbearance, an administrative forbearance shall be applied after the deferment/ plan end so that borrower remains in forbearance until FSA instructs the servicer to remove the forbearance. The servicer shall also continue to notify the borrower of IDR plan renewals and other existing IDR notifications. |
| 23018.013 | The servicer shall  apply the proper tags to borrower account for non-defaulted loans to stop all collection activity until FSA instructs the servicer to remove this stoppage. |
| 23018.014 | The servicer shall upload a copy of the documentation sent to the borrower related to this stoppage of collections/forbearance to CEMS platform. The servicer shall ensure a copy of any/all notices to the borrower related to the forbearance/stoppage of collection is uploaded (if any notices are sent). |
| 23018.015 | The servicer shall apply the forbearance/stoppage of collections within 5 business days. |

| 23018.020 | **The servicer shall accept and apply requests to remove any forbearance or stopped collections from a borrower's loan(s).** |
|---|---|
| 23018.021 | The request to remove a forbearance/stopped collections may be received via the CEMS platform or via email request from FSA. |
| 23018.022 | The servicer shall upload a copy of the documentation sent to the borrower related to the ending of this stoppage of collections/forbearance to CEMS platform. The servicer shall ensure a copy of any/all notices to the borrower related to the end of the forbearance/stoppage of collection is uploaded (if any notices are sent). |
| 23018.023 | The servicer shall remove the forbearance/stoppage of collections within 5 business days. |

6.     I downloaded and saved the "01 - Business Operations Servicing Requirements" and the documents referenced in the first row of the above chart at the following Dropbox link: https://www.dropbox.com/sh/s5q9lk9ezywf259/AAChLg32nYtcoIBDg_8IPyBra?dl=0.     These referenced documents provide questions and answers regarding the DMCS specifically, (see 23018 Appr_QuestionsResponses_v10.docx, at row nos. 10-20); set forth instructions on the propriety of removing tags so as to allow "TOP" to apply (see 23018 AdHoc_Instructions_v16_wSoL.newNotice.docx, at pp. 8-9), and describe the circumstances in which a borrower's loan could be removed from "forbearance/stop collections due to a borrower defense application" (see 23018 Servicers_Ineligible_Instructions_v7b.docx, at p. 1).

7.     On March 11, 2021, the parties held a meet and confer on Plaintiff's Motion to Unseal.  During that telephone conference, Plaintiff advised Defendant that the sealing inquiry entails a document-by-document review, and that Plaintiff would consider the propriety of unsealing documents (or portions thereof) that Maximus specifically identifies.  Maximus did not identify any specific document by bates number during the conference, and the parties were unable to agree to the propriety of sealing any records beyond Plaintiff's tax return.

I certify under penalty of perjury that the foregoing is true and correct.

Date: <u>March 19, 2021</u>                    <u>*/s/ Jody T. López-Jacobs*          </u>
                                                JODY T. LÓPEZ-JACOBS
                                                **FLITTER MILZ, PC**
                                                450 N. Narberth Avenue, Suite 101
                                                Narberth, PA  19072
                                                T: (610) 668-0011
                                                F: (610) 667-0552
                                                E: jlopez-jacobs@consumerslaw.com

                                                **Counsel for Plaintiff and the Class**

# Exhibit A

 An official website of the United States government
Here's how you know ∨

*Authoritative site for Assistance Listings, Wage Determinations, and Contract Opportunities only*

ⓘ **New Design Coming to beta.SAM.gov!** 

A new design is coming to **beta.SAM.gov** on 4/26/2021. Please see our **downloadabl**…

**More alerts ⊕**

  ☰  🔔    **Sign in**



🖾 Follow

# Interim Servicing Solution

### Contract Opportunity

General Information

Classification

Description

Attachments/Links

Contact Information

History

💬 What you think matters!

**Provide Feedback**

◯ **INACTIVE**      Contract Opportunity

**Notice ID**
91003120R0018

**Related Notice**

**Department/Ind. Agency**
EDUCATION, DEPARTMENT OF
**Sub-tier**
EDUCATION, DEPARTMENT OF
**Office**
FSA ACQUISITIONS OFFICE

# General Information

**View Changes**

**Contract Opportunity Type:** Solicitation (Updated)
**All Dates/Times are:** (UTC-04:00) EASTERN STANDARD TIME, NEW YORK, USA

■**Updated Published Date:** Oct 28, 2020 10:26 am EDT

**Original Published Date:** Oct 28, 2020 10:20 am EDT

**Updated Date Offers Due:** Dec 09, 2020 02:00 pm EST

**Original Date Offers Due:** Dec 09, 2020 02:00 pm EST

**Inactive Policy:** 15 days after date offers due

**Updated Inactive Date:** Dec 24, 2020

**Original Inactive Date:** Dec 24, 2020

**Initiative:**

- None

# Classification

**Original Set Aside:**

**Product Service Code:** R710 - SUPPORT- MANAGEMENT: FINANCIAL

**NAICS Code:** 522390 - Other Activities Related to Credit Intermediation

**Place of Performance:**

# Description

Department of Education, Federal Student Aid hereby releases Solictiation No. 91003120R0018 for the Interim Servicing Solution.

# Attachments/Links

☁**Download All Attachments/Links**



| Document | File Size | Access | Updated Date |
|---|---|---|---|



# Contact Information

## Contracting Office Address

830 1ST ST, NE
WASHINGTON , DC 20002
USA

## Primary Point of Contact

FSA NextGen Acquisitions

✉ MPDSETeam@ed.gov

## Secondary Point of Contact

# History

Dec 24, 2020 11:55 pm EST
Solicitation (Inactive)

Oct 28, 2020 10:20 am EDT
Solicitation (Original)



**General Services
Administration**

## About Us

Explore Our Community ⧉

Release Notes

## Partners

Acquisition.gov ⧉

USASpending.gov ⧉

Grants.gov ⧉

More Partners

## Customer Service

Learning Center

Contact Federal Service Desk ⧉

Resources

Freedom of Information Act ⧉

This is a U.S. General Services Administration Federal Government computer system that is **"FOR OFFICIAL USE ONLY."** This system is subject to monitoring. Individuals found performing unauthorized activities are subject to disciplinary action including criminal prosecution.