IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAIMARIA BODOR,<br>Individually and on behalf of all others<br>similarly situated<br><br>      Plaintiffs,<br><br>      v.<br><br>MAXIMUS FEDERAL SERVICES, INC.<br><br>      Defendant. | Civil No. 5:19-cv-05787-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                         **October 22, 2021**

## OVERVIEW

Plaintiff Jaimaria Bodor alleges her 2018 tax return was improperly seized by the U.S. government due to a lapse by Defendant Maximus Federal Services, Inc. ("Maximus"), a purported collector of student loan debt, in violation of the Fair Debt Collection Practices Act ("FDCPA"). Before the Court is Defendant's Motion for Summary Judgment, which the Court denies for the reasons discussed below.

## I.   BACKGROUND AND ALLEGATIONS OF PLAINTIFFS

Plaintiff asserts a claim individually and on behalf of a class of similarly situated persons against Defendant for engaging in abusive, deceptive, and unfair debt collection practices prohibited by the FDCPA, 15 U.S.C. §1692. Am. Compl. ¶4, ECF No. 29.

The Department of Education, Office of Federal Student Aid ("FSA"), administers student financial aid programs authorized under Title IV of the Higher Education Act of 1965. 79 Stat.

1

1219. In 2013, FSA entered into a contract with Defendant, a government services company, to operate, maintain, and continue development of FSA's Debt Management and Collection System, ("DMCS"). Defendant's Statement of Facts ("DSOF") ¶ 1, ECF No. 64-1. DMCS is used to service FSA's portfolio of defaulted student loans. *Id.* Congress requires federal agencies to refer delinquent nontax debt, such as defaulted student loan debt, to the U.S. Department of the Treasury ("Treasury") for collection, including through administrative offset, which means withholding funds payable by the United States to satisfy a debt. 31 U.S.C. § 3716(c)(6); DSOF ¶ 7-8 n.1. Pursuant to this authority, Treasury operates a centralized Treasury Offset Program ("TOP"), *see* 31 C.F.R. § 285.5(a)(1), which offsets payments, such as tax refunds, that are intended to be made to a delinquent student loan borrower and applies those payments to any delinquent debts held by FSA. DSOF ¶ 7 n.1.

In 2012, Plaintiff took out two federal loans in order to attend a school owned by the now-defunct for-profit education company, Corinthian Colleges. Plaintiff's Statement of Facts ("PSOF") ¶ 123, ECF No. 69-3. In 2014, after allegedly receiving an inadequate education, Plaintiff defaulted on her loans. PSOF ¶124. Under the Higher Education Act, federal loan borrowers, like Plaintiff, are eligible for loan discharge if the college or university for which the loans were obtained misled them. Am. Compl. ¶ 19.

On March 13, 2019, Plaintiff filed a Borrower Defense to Repayment Application ("BD") to stop collections on her loans, with the specific goal of preventing the forced collection of her 2018 tax refund. PSOF ¶ 127. Once a borrower files a BD application, their loan is stayed from collection. Defendant's Motion for Summary Judgment ("Def. MSJ") 9, ECF No. 64. Defendant is responsible for manually recognizing and applying BD tags to a borrower's account to prevent the DMCS system from referring an account to a private collection agency ("PCAs") or to

Treasury for a TOP offset. DSOF ¶ 15; Def. MSJ 21. On April 25, 2019, Plaintiff's 2018 tax refund of $79.00 was improperly withheld because Defendant delayed in applying a BD tag to her account. PSOF ¶ 132. The withholding of Plaintiff's tax refund resulted in this lawsuit.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to those facts is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). "We view all the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Id.* (internal quotation marks and citation omitted).

The party moving for summary judgment must first "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

## III. DISCUSSION

### A. Standing

Defendant first argues that Plaintiff lacks standing to bring forth her claim. To establish standing under Article III of the Constitution, a plaintiff must (1) demonstrate an injury in fact, which is a harm that is (a) both concrete and actual or imminent, and (b) not conjectural or hypothetical; (2) show causation, which is a fairly traceable connection between the alleged injury in fact and the alleged conduct of a defendant; and (3) demonstrate redressability, which is a substantial likelihood that the requested relief will remedy the alleged injury in fact. *See Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000). "The requirements for standing do not change in the class action context." *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017). "Named plaintiffs, [such as Plaintiff], who represent a class must allege and show that they personally have been injured." *Id.*

Defendant claims that Plaintiff can demonstrate neither a concrete injury nor causation to establish standing. Def. MSJ 17. As to the injury element, Defendant argues that Plaintiff did not sustain an injury because the $79.00 that was mistakenly seized from her 2018 tax refund was returned to her six months later. Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("POMSJ") 14, ECF No. 69-2. Plaintiff counters that she suffered direct personal harm by losing the use of her money and the ability to earn interest for six months. *Id*. The Court finds that Plaintiff has suffered an injury. "So long as an injury affects the plaintiff in a personal and individual way, the plaintiff need not suffer any particular type of harm to have standing." *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 636 (3d Cir. 2017). "For standing purposes, a loss of even a small amount of money is ordinarily an injury." *Czyzewski v. Jevic*

*Holding Corp*. 137 S. Ct. 973, 983 (2017). "In fact, several sister circuits have held that temporary loss of use of money is itself a sufficiently concrete injury to establish standing." *Pontes v. Rowan Univ.,* 2021 WL 4145119, at *8 n.5 (3d Cir. Sept. 13, 2021) (citing cases). Plaintiff's claims to economic loss, even temporary, is a concrete and actual injury sufficient to establish standing.

Defendant next claims that Plaintiff cannot show that her injury was caused by its conduct. Def. MSJ 19.  The Court finds sufficient causation exists in the record. Article III's causation requirement is "akin to 'but for' causation in tort and may be satisfied even where the conduct in question might not [be] a proximate cause of the harm." *Finkelman v. NFL*, 810 F.3d 187, 193 (3d Cir. 2016) (citation omitted). An "indirect causal relationship will suffice," provided there is a "fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant." *Id.* at 193-194. Defendant says its role was limited to the application of an electronic tag to Plaintiff's account on April 29, 2019, four days after Treasury garnished her 2018 tax refund. Def. MSJ 19. However, without Defendant's delay in applying this tag, Plaintiff's tax refund would not have been garnished. Said otherwise, but for Defendant's failure to timely tag Plaintiff's account, Plaintiff's tax refund would not have been seized.

Defendant also argues that it was a victim of external factors beyond its control, meaning that any injury to Plaintiff is not "fairly traceable" to Defendant's conduct. Def. MSJ 19. Defendant's emphasis on external intervening forces is not persuasive. The traceability requirement is met even where intervening events sever the chain of proximate causation between the conduct and the injury at issue. *See Edmonson v. Lincoln Nat'l Life Ins. Co.,* 725 F.3d 406, 418 (3d Cir. 2013). "But for" is a lesser standard than proximate cause and "but for" causation is all that is needed for standing purposes. Defendant's conduct has met that standard and satisfied the causation requirement necessary to establish standing.

5

### B. FDCPA

Having rejected Defendant's standing argument, the Court now turns to the substance of Plaintiff's FDCPA claims. Defendant first moves for summary judgment on the grounds that it did not engage in "debt collection activity," a threshold requirement for FDCPA claims. Defendant then argues that it did not violate §1692(e) because it never communicated with Plaintiff, and similarly argues that it did not engage in any unfair or unconscionable debt collection practices in violation of §1692(f). Defendant further contends that, even if it did violate the FDCPA, it is still entitled to summary judgment because it meets the requirements for a bona fide error defense. Finally, Defendant argues that Plaintiff's claims are barred by the immunity afforded to government contractors. Keeping in mind that "[t]he FDCPA is a remedial statute, and we construe its language broadly so as to effect its purposes," *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011) (citation omitted), the Court considers each argument in turn and declines to enter summary judgment.

#### 1. Debt Collection Activity

First we examine Defendant's threshold argument that it did not engage in any debt collection activity. The Court finds sufficient evidence of debt collection activity by Defendant.

"To prevail on any FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a debt as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing,* 765 F.3d 299, 303 (3d Cir. 2014). The only element at issue in this case is the third – whether Defendant engaged in "debt collection" activity. Def. MSJ 19. "The FDCPA regulates 'debt collection' without defining the term." *Simon v. FIA Card Servs. N.A*. 732 F.3d 259, 265 (3d Cir. 2013). The FDCPA however,

states that "to be liable under the statute's substantive provisions, a debt collector's targeted conduct must have been taken 'in connection with the collection of any debt,' e.g., 15 U.S.C. §§ 1692c(a)—(b), 1692d, 1692e, 1692g, or in order 'to collect any debt.'" *Id*.

Defendant argues that "there is no evidence of any 'collection activity' taken by [them]." Def. MSJ 19. Defendant maintains its only activity relating to Plaintiff is the attachment of an electronic tag to her account within DMCS, and its role in applying an electronic tag does not constitute "collection activity." Def. MSJ 19. However, courts have long considered wage and account garnishment to be debt collection activity. *See Carmichael v. Pressler & Pressler*, *LLP*, 646 Fed. Appx. 192 (3d Cir. 2016) (where wage garnishment was assumed to be collection activity).[1]

The Department of Education ("ED") has stated that "third party collectors of defaulted student loans . . . [are] subject to the Fair Debt Collection Practices Act." 55 Fed. Reg. 40120 (1990). Similarly, the Federal Deposit Insurance Company ("FDIC") refers to the administrative offset of monies payable by the government as collecting a debt. 12 C.F.R. 313.21.

The court is satisfied that sufficient evidence exists for a reasonable jury to find that Defendant engaged in collection activity.

---

[1] *See e.g. Fed. Hous. Admin., Region No. 4 v. Burr*, 309 U.S. 242, 245–46, (1940). ("Garnishment and attachment commonly are part and parcel of the process, provided by statute, for the collection of debts."); *Parker v. Pressler & Pressler, LLP*, 650 F. Supp. 2d 326 (D.N.J. 2009)(where garnishing wages was considered a lawful means to collect on a judgement); *Micks v. Gurstel Law Firm, P.C.*, 365 F. Supp. 3d 961, 974 (D. Minn. 2019) (where it was not disputed that garnishment constituted collection activity).

### 2. Violation of U.S.C. § 1692 (e) - Communication

Having determined that the jury could find that Defendant engaged in debt collection activity, the Court now turns to Defendant's communication argument. There is a genuine dispute as to whether Defendant communicated with Plaintiff, and so summary judgement is denied.

15 U.S.C. § 1692(e) states "a debt collector may not use false, deceptive, or misleading representation or means in connection with the collection of any debt." The statute further provides that it is a violation to make a "false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692(e).  The term "communication" has been broadly defined. *See Cole v. Toll*, 2007 U.S. Dist. LEXIS 85173, at *12 (M.D. Pa. Nov. 16, 2007). The Act defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692(a)(2).

Defendant says it  never "communicated" with Plaintiff. Def. MSJ 21; DSOF ¶ 65. Defendant asserts that there is no evidence that [it] violated U.S.C. §1692(e) because it only purportedly had [communication] with Treasury regarding [Plaintiff's] account and even then, "there is no evidence [Defendant] communicates directly with Treasury," only via FSA's DMCS system which has "internal logic" that identifies accounts with BD tags and then automatically generates a report to Treasury. Def. MSJ 21-22.

But the record belies this point. The record shows that DMCS is a system exclusively operated and maintained by Defendant and its reports to Treasury are based on the tags Defendant manually place on their accounts. Def. MSJ 9, 21. Defendant's own corporate representative explained that applying tags is "a way of telling [T]reasury don't offset monies until told otherwise." POMSJ 8. Pursuant to Defendant's contract with FSA, Defendant assumed

8

responsibilities for communicating about TOP eligible and ineligible borrowers to Treasury. POMSJ 24. Courts have also held that debt collectors such as Defendant can violate §1692e by representing material information to third parties like Treasury.[2]

Further, Defendant "staffs and operates FSA's inbound call centers, its intake facility for correspondence, and its correspondence unit for composing custom written responses to certain inquiries." DSOF ¶ 3. The record shows that Defendant operates the call center and communicates with borrowers in writing, but Defendant's employees do not identify themselves and borrowers have no way of knowing they are communicating with Defendant's employees. PSOF ¶ 65; POMSJ 9.

On these facts, a reasonable jury could find that Defendant communicated with Plaintiff.

### 3. Violation of U.S.C. § 1692 (f) – Unfair and Unconscionable Means

Plaintiff further claims that Defendant violated § 1692f and § 1692f(1) by collecting on defaulted student loan debts, using unfair or unconscionable means. Am. Compl. ¶ 62. This section of the statute states: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The statute further provides that it is a violation

---

[2] *See e.g., Sullivan v. Equifax, Inc.*, 2002 U.S. Dist. LEXIS 7884 (E.D. Pa. Apr. 19, 2002) (applying § 1692e to communication to credit reporting agency); *Scott v. Portfolio Recovery Assocs., LLC*, 139 F. Supp. 3d 956, 967 (S.D. Iowa 2015) (applying § 1692e to communications to employer for purposes of garnishing plaintiff's wages); *Plummer v. Atl. Credit $ Fin., Inc.*, 66 F. Supp. 3d at 491-92 (S.D. N.Y. 2014) (collecting cases that "have recognized that communications with a third party are actionable under the [FDCPA]").

to collect any amount "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f and § 1692f(1).

Plaintiff claims that Defendant failed to cease collection activity and caused her account to be garnished after she filed her BD application using unfair and unconscionable means. POMSJ 19. Defendant asserts there is no evidence [it] violated the statute by an unfair collection and further, the circumstances that led Treasury to offset Plaintiff's 2018 tax refund were caused by external factors outside of their control.[3] DSOF ¶39; Def. MSJ 23. Defendant argues that Plaintiff's §1692(f) claim also fails because Defendant had adequate policies and procedures in place to stop the collection activity. Def. MSJ 24.

But the record could reasonably support a rejection of Defendant's claim that external factors alone were responsible for the garnishment of Plaintiff's tax return, and that Defendant had adequate policies and procedures in place to prevent such a garnishment. POMSJ 12. For example, in April 1, 2019, when Defendant received a large influx of BD applications, it already had an existing backlog of its own making, and its 2019 Performance Assessment indicated it had failed to hire enough staff. *Id.* Defendant's system was designed with a "blind spot" which was incapable of identifying some involuntary payments, like Plaintiff's, that were entered before a BD tag was applied. Def. MSJ 30; POMSJ 31. Designing the system this way could be considered unreasonable. *Id.*

Additionally, courts have held that erroneously garnishing a student loan debtor's wages is a violation of §1692(f). *See Micks v. Gurstel Law Firm, P.C.,* 365 F. Supp. 3d 961, 974 (D.

---

[3] These factors included: the depletion of funding, an FSA imposed hold on accounts, higher than expected volume, and a backlog of BD application work. DSOF ¶¶ 39-41.

Minn. 2019) (debt collector violated § 1692f by garnishing wages after student loan judgment was vacated). *Demarais* observes "an erroneous garnishment" on an extinguished debt violates 15 U.S.C. 1692(f). *Demarais v. Gurstel Chargo, P.A.,* 869 F.3d 685, 697 (8th Cir. 2017).[4]

Whether external forces beyond Defendant's control or failures in their own policies and procedures caused and justified the mistaken seizure of Plaintiff's tax refund are genuinely disputed material facts appropriate for resolution by the finder of fact.

### 4. Bona Fide Error Defense

Defendant claims that even if its actions violated the FDCPA, it is entitled to summary judgment because it is shielded from liability by the Bona Fide Error Defense. Def. MSJ 25. As the name implies, Defendant claims that Plaintiff's tax refund was withheld due to a bona fide error for which Defendant cannot be liable. Def. MSJ 27. Again, a genuine dispute of fact precludes a conclusion that this defense prevails as a matter of law.

"Where a defendant moves for summary judgment based on an affirmative defense, it would bear the burden of proof at trial and must show that it has produced enough evidence to support the findings of fact necessary to win on summary judgment." *Johnson v. Mattress Warehouse, Inc.*, No. 20-891, 2021 WL 4206722, at *2 (E.D. Pa. Sept. 16, 2021) (internal quotation marks and citation omitted).

15 U.S.C.§ 1692k(c) states "a debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Accordingly, to avail itself of the defense,

---

[4] *See also Deangelo v. LVNV Funding LLC*, 2020 WL 3468061, at *6 (D.N.J. June 25, 2020) (time-barred debt).

Defendant will have to establish: (1) the alleged violation was unintentional, (2) the alleged violation resulted from a bona fide error, and (3) the bona fide error occurred despite procedures designed to avoid such errors. *Beck v. Maximus, Inc.,* 457 F.3d 291, 297-298 (3d Cir. 2006). "Procedures . . . are processes that have mechanical or other such regular orderly steps designed to avoid errors like clerical or factual mistakes." *Daubert v. NRA Group, LLC.,* 861 F.3d 382 (3d Cir. 2017). "Procedures . . . to avoid error[s] [are] strictly construed to require a special system be established to assure that no initial errors occur and that a checking mechanism be maintained to catch any errors that slip through the system." *Thomka v. A.Z. Chevrolet, Inc.* 619 F. 2d 246 (3d Cir. 1980).

Defendant maintains that it meets the requisite elements of the defense because (1) the withholding of Plaintiff's tax refund was unintentional, (2) the withholding of the tax return was a bona fide error and (3) Defendant's relevant procedures were reasonably designed to prevent the error. Def. MSJ 25-30.

Defendant claims the first element is satisfied because there was no intent on its part as Defendant is "wholly unaware a borrower has submitted a BD application . . . until it receives the requisite information from CEMS, and the tax offsets occur as part of an automated system." Def. MSJ 26-27. Defendant maintains the second element is satisfied because "the[ir] brief delay in applying the relevant tags was caused by a confluence of external factors; and the application of an electronic code to a borrower's account is the type of "clerical error" that serves as the basis for a bona fide defense." MSJ 28. Defendant claims element three is satisfied because the record shows that its procedures were reasonably designed, reasonably adapted to avoid the error alleged by Plaintiff, and worked with a high degree of effectiveness; and although there was a "blind spot" in the system, it only affected a limited number of borrowers. Def. MSJ 28-30.

Again, there are facts in the record contrary to these arguments. Although there were extenuating external factors such as an application volume increase and funding delays, the record shows that there may have been policies or procedures that could have prevented Defendant's FDCPA violations that were either not followed, not reasonable, or inherently flawed. Def. MSJ 34. For example, Defendant argues that its manual procedures mistakenly left a "blind spot" which impacted a reasonable and very limited number of borrowers (approximately .04%), but there is other evidence in the record that this "blind spot" impacted at least 8.7 percent of all DMCS borrowers who submitted a BD application. POMSJ 13. In a letter to Defendant, ED spoke of Defendant's failure to protect Plaintiff and thousands of other borrowers from improper offsets as a failure by Defendant to "properly follow the instructions" of its contract, causing "significant harm" to student borrowers. POMSJ 35. The record also indicates that Defendant's leadership had not evaluated whether its policies and procedures complied with the FDCPA, Defendant's employees had no verbal training on FDCPA compliance, and its corporate representatives were unaware if Defendant had any written policies concerning the FDCPA. POMSJ 30.

Whether Defendant's actions were intentional, whether external factors caused the delay, and whether Defendant had reasonably designed policies and procedures in place despite their "blind spot" are material disputes to be determined by the jury.

### 5. Contractor Immunity

Defendant also claims the defense of "contractor immunity" because it was acting pursuant to a valid contract with, and at the direction of the FSA. Def. MSJ 31. "Private government contractors are entitled to derivative sovereign immunity if (1) the government authorized the contractor's actions and (2) the government validly conferred that authorization. However, this

immunity is not absolute or unqualified. It does not protect a government contractor who violates federal law and the government's explicit instructions." 15A MOORE'S FEDERAL PRACTICE - CIVIL § 105.21 (2021).

In 2016, the Supreme Court clarified that a government contractor may not claim "derivative immunity" when it has "exceeded [its] authority," its authority "was not validly conferred" or it "violates the government's explicit instructions." *Campbell-Ewald Co. v. Gomez,* 577 U.S. 153 (2016).

As to the first element, Defendant claims it has a government contract to "operate and maintain FSA's DMCS system," and the terms of the contract are "dictated" and "heavily regulated" by FSA. Def. MSJ 32. It maintains this element is satisfied because FSA has the authority to operate and maintain the DCMC system and "validly conferred" the contract to Defendant. Def. MSJ 33. It claims they did not violate the express directions of FSA by neglecting to apply the BD tag within five days as provided for in the contract. Defendant further maintains any delays were "caused by external factors entirely outside of [their] control." Def. MSJ 33. It argues that "[Plaintiff] is not entitled to attack the validly conferred and approved procedures of FSA," which they were following. Def. MSJ 31.

The record provides ample room for reasonable, contrary interpretation of Defendant's claims. The contract with the government gives Defendant considerable discretion. POMSJ 6. It does not mandate a specific process. *Id*. Specific language in the contract states "[t]he Contractor [Maximus] shall determine how best to meet the Government's needs." POMSJ 34. Similarly, the contract directs Defendant to "establish a process" to identify improper involuntary payments for refund but does not provide specific parameters. PSOF ¶ 5.

The record also indicates there was an explicit directive from FSA to process BD tag requests within five business days. POSJM 31. Defendant's corporate representatives testified that, despite never being told it could suspend this five-day deadline, Defendant made a unilateral decision to cease processing pending BD tag requests. POMSJ 31, 35. In fact, the FSA sent Defendant a "letter of concern" in October 2019 regarding Defendant's alleged failure to follow certain contractual terms and instructions in applying the requisite tags in the DMCS system to cease collection activity. Def. MSJ 34. The Court finds reasonable disputes of fact exist which foreclose a finding that Defendant's claim of governmental immunity must prevail as a matter of law.

IV.    CONCLUSION

For the reasons discussed above Defendant's motion for summary judgment is denied. An order to this effect shall follow.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge