IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAIMARIA BODOR, Individually and on behalf of all others similarly situated, | : : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | NO. 19-cv-5787(JMG) |
| MAXIMUS FEDERAL SERVICES, INC., | : : : | PUBLIC VERSION FILED DECEMBER 6, 2021 |
| Defendant. | : | |

**DEFENDANT MAXIMUS FEDERAL SERVICES, INC.'S
STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AS TO PLAINTIFF'S INDIVIDUAL CLAIMS**

Pursuant to Federal Rule of Civil Procedure 56, Local Rule of Civil Procedure 7.1, and Your Honor's Policies and Procedures, Defendant Maximus Federal Services, Inc. ("Maximus Federal") hereby files this Statement of Undisputed Facts in Support of its Motion for Summary Judgment as to Plaintiff's Individual Claims.

    **A.**    **FSA's Contract with Maximus Federal**

    1.    On September 30, 2013, the Department of Education Federal Student Aid ("FSA") entered into a contract with Maximus Federal to, among other things, "operate, maintain and continue development of FSA's portfolio management system," the "DMCS system." (Contract No. ED-FSA-13-C-0021, the "Contract"). [JA-00380 - 00431].

    2.    The DMCS system is FSA's portfolio management database that is used to service FSA's portfolio of defaulted student loans. [JA-00384].

    3.    Pursuant to the Contract, Maximus Federal also provides technical resources to keep the DMCS system working efficiently and effectively, and also staffs and operates FSA's

inbound call centers, its intake facility for correspondence, and its correspondence unit for composing custom written responses to certain inquiries. [JA-00384 - 00385].

4. Maximus Federal works at the direction and supervision of FSA and pursuant to the 3,000 requirements set forth in the Contract. [Id; see also JA-00775 - 00781].

5. Maximus Federal has little to no discretion to operate under the terms of the Contract and nearly every action taken under the Contract is reviewed and approved by FSA. [JA-968:12-21].

6. Maximus Federal and the FSA are in constant communication regarding fulfillment of the 3,000 requirements, including at weekly, bi-weekly, and monthly meetings. [JA-963:1-9; JA-883:1-4; JA-891:21-892:4].

    **B.**     **The Treasury Offset Process and BD Applications Generally[1]**

7. Once a borrower's account is certified for TOP offsets within the DMCS system, it does not need to be "recertified" and TOP offsets will continue each year until the delinquent debt is paid in full or removed from the TOP process. [JA-922:1-12; JA-923:16-924:19].

---

[1] Congress requires federal agencies to refer delinquent nontax debt, such as defaulted student loan debt, to the Department of the Treasury ("Treasury") for collection, including through administrative offset. 31 U.S.C. §§ 3716(c)(6), 3720A; 31 C.F.R. §§ 285.5(c), (d). Pursuant to this authority, Treasury operates a centralized Treasury Offset Program ("TOP"), see 31 C.F.R. § 285.5(a)(1), which offsets payments, such as tax refunds, that are intended to be made to a delinquent student loan borrower and applies those payments to the delinquent debts held by FSA. See 31 C.F.R. §§ 285.5(b), 285.5(c)(2), 285.2(b). Where a tax refund is offset, Treasury sends a notification to the borrower indicating that his or student loan has been offset and identifying the "creditor agency" to whom the debt is owed. Id. The foregoing is provided for background only and is not asserted as a statement of material fact.

  **C.**  **The DMCS System Maintains Procedures to Stop Collection Activities**

  8.  The DMCS system includes procedures to prevent collection activity upon receiving notice of a borrower's BD application. [JA-985:18-986:15; JA-221-256; JA-257-313; JA-693-749].

  9.  Prior to April 2018, this process included the application of an electronic tag on a borrower's account ("BD Received Tag") that would among, other things, prevent the account from being subject to certain third-party collection activities. [JA-681-692].

  10.  The application of the relevant tags in the DMCS system was applied automatically through a Mass File Update supplied by FSA. [Id.].

  11.  On April 9, 2018, FSA submitted a Change Request to the Contract (CR 4619) which sought to modify the process by which these BD Received Tags were applied to a borrower's account in the DMCS System. [JA-00338 - 00346].

  12.  A "CR" is a formal request from FSA to change or modify a portion of the Contract. [JA-855:5-7].

  13.  Upon receipt of a CR, Maximus Federal conducts an impact analysis and submits a proposal in response to FSA's CR. [JA-985:17-24].

  14.  These proposals are ultimately approved by FSA and memorialized in the form of a final CR. [JA-1022:13-1023:1].

  15.  CR 4619 modified the process to require Maximus Federal to manually apply BD Received Tags to a borrower's account, after receiving an email from FSA with the requisite BD application information. [JA-00687 -00688].

  16.  CR 4619 explained that borrowers who submit BD Applications need collection activity stopped on their loans in DMCS while their BD applications are reviewed by FSA. Id.

17. These tags were used to prevent the DMCS system from, among other things, referring an account to a private collection agency ("PCAs") or to Treasury for a TOP offset. [JA_00338 – 00346; JA-00755 – 00744; JA-978:8-979:15].

18. FSA also maintains separate contracts with PCA's to undertake certain collection activity on a borrower's account. [JA-1016:3-13].

19. The application of a BD Received Tag results in a weekly automated report being generated by the DMCS system and sent to Treasury. [JA-999:23-1000:3; JA-911:12-20; JA-00709; JA-00709].

20. Maximus Federal does not communicate the application of the BD Received Tags to Treasury. [JA-00918:3 – 000919:13].

21. CR 4619 estimated that FSA currently received approximately 50-60 BD applications per day and anticipated that the "volume will remain about the same." [JA-00687].

22. CR 4619 required Maximus Federal to respond to the FSA's email requests to apply BD Received tags on a borrower's account "within five business days." [JA-00685, 00689].

23. In finalizing CR 4619, Maximus Federal included an assumption that it would "accommodate the manual processing of 75 – 80 Borrower Defense Claims Stopped for Collections per day." [JA-00690].

24. Pursuant to CR 4619, if Maximus Federal received a volume greater than 75-80 per day, it would assess the impact and collaborate with FSA to resolve the issue as necessary. [Id.].

25. FSA approved the Maximus Federal's proposal, along with assumptions, on April 27, 2018. [Id.;JA-1021:7-23].

26. On July 31, 2018, FSA sought to further modify the process for applying BD Received Tags in DMCS through CR 4753. [JA-00755 – 00774].

27. CR 4753 left in place many of the procedures in CR 4619, including the application of the BD Received Tags in the DMCS system. [Id.].

28. However, CR 4753 modified the manner in which FSA would communicate a BD applications. [Id.].

29. Specifically, CR 4753 required Maximus Federal to retrieve, among other things, notification of BD applications through an enhanced electronic system—the Customer Engagement Management System ("CEMS") Partner Portal. [JA-00759].

30. CEMS is operated and maintained by another government contractor, Centure, who receives and processes BD applications, and assigns them through CEMS. [JA-1024:5-1025:11].

31. Centure was also responsible for maintaining the call center, the relevant website, and responding to borrower inquiries relating to BD applications. Id.

32. In addition to the application of these electronic tags, the DMCS system also had a procedure to search for any offsets after the date of the BD application and refund those payments to a borrower. [JA-00713 – 00722; JA-00688-89].

33. Maximus Federal uses the solution user manual ("SUM"), which is reviewed and approved by FSA, as the training resource for the operation of DMCS. [JA-00693-00749; JA-00856:14-24].

34. Maximus Federal employees are trained on the SUM. [JA-01006:5-01007:6].

35. Maximus Federal also audits the DMCS' processes, including the BD Received tagging process to ensure it is working appropriately. [JA-00941:1 - 00942:7].

    **1.    Events Leading to Plaintiff's BD Application**

36. In February 2019, FSA and its contractors saw a dramatic increase in the number of BD applications. [JA-01003:2 - 01004:9; JA-00673].

37. Maximus Federal communicated with FSA regarding the increase in the number of BD applications and the potential reasons for the same. [JA-00583; JA-00581 - 00582].

38. Beginning in late February 2019, the funding for Maximus Federal to process BD applications pursuant to CR 4619 and CR 4753 began to deplete. [JA-00600; JA-688:22-670:15].

39. The depletion of funding eventually leading to a hold imposed by FSA on the processing of BD applications from February 25, 2019 to March 11, 2019. [JA-00600; JA-688:22-670:15].

40. As a result, a backlog of BD application work accumulated in CEMS, causing Maximus Federal to fall outside the standard 5 business day time period to apply the proper "tags" to the borrower account. [JA-00600; JA-913:22-915:12.].

41. FSA did not give Maximus Federal any indication that volumes would be higher than estimated. [JA-00600].

42. During this same time period, Maximus Federal was also working with FSA to address the impact of FSA's unilateral contract modification ED-FSA-13-C-0021-P000106 ("Modification 106"), which changed the contract terms related to DMCS staff security clearance requirements. [JA-00599 - 00602; JA-1001:9-1002:16].

43. Modification 106 resulted in security clearance delays for new hires and ultimately limited the resources available to work the backlog. [JA-913:22-915:12].

44. Notwithstanding the issues with funding delays, processing holds, and security clearances, Maximus Federal continued to process more than 75-80 applications per day. [JA-00029 - 00086; JA-00087 - 00122; JA-00953:5 - 00954:2].

45. In order to keep up with the increased volume, Maximus Federal employees were working overtime (at one point mandatory overtime) and multiple requests for additional employee clearances were made to FSA. [JA-945:22-953:3].

46. However, Maximus Federal had no additional employees who had the required FSA clearance to work through the excess volume. [Id.].

**2.   Plaintiff's Federal Student Loans and BD Application**

47. Plaintiff was certified for TOP offsets beginning in 2015 and her prior tax refunds were offset by Treasury to pay her defaulted loans. [JA_825:6-826:12].

48. Plaintiff's BD application was submitted to FSA on March 14, 2019. [JA-00983:1-7].

49. Plaintiff's BD application was processed by Centure and eventually assigned to Maximus Federal through CEMS on April 1, 2019. [JA-614-627].

50. Ms. Bodor's BD application was submitted as part of a Mass File update made to CEMS by FSA on April 1, 2019. [JA-1026:8-1028:16].

51. This update significantly increased the number of BD applications submitted through CEMS from 2,365 to 16,360. [JA-202; JA-814-15; JA-1026:8-1028:16].

52. Maximus Federal promptly notified FSA of the impact this significant increase of BD applications would have on its ability to process BD applications within the 5 business day time period. [JA-903:22-905:17].

53. FSA worked to create a Mass File update that would remove a significant portion of these borrowers from CEMS. [Id.].

54. While FSA worked on the Mass File update, Maximus Federal was directed to "stop work" on the population of borrowers received in CEMS on April 1, 2019, which included Plaintiff's application. [JA-906:21-907:9; JA-1027:17-1028:5].

55. As a result of the hold issued by FSA, Maximus Federal could not have met the standard 5 business day time period for applying BD Received Tags to the relevant borrowers' accounts, including Plaintiff's account. [Id.].

56. On April 9, 2019, FSA provided a Mass File update to the DMCS system that removed approximately 14,000 borrowers from CEMS. [JA-1026:8-1028:16; JA-00792-93].

57. This left Maximus Federal with more than 2,300 BD Received Tag requests in CEMS, including Plaintiff's BD Received Tag.[2]  [JA-1026:8-1028:16].

58. Maximus Federal continued to work through the backlog of remaining BD applications in CEMS with the oldest BD Received Tags being worked first. [JA-903:22-905:17; JA-00699 – 00700].

59. Thus, Maximus Federal could not have been aware of Plaintiff's BD application until it had an opportunity to review her account in CEMS and apply the appropriate tags in the DMCS system. [Id.].

60. On April 29, 2019, a BD Received Tag was properly applied to Plaintiff's accounts in DMCS – a delay of fifteen business days. [JA-936:7-937:9].

61. On May 3, 2019 the BD Received Tag was communicated to Treasury as part of the weekly automated communication from the DMCS system. [JA-966:3-8].

62. Bodor's account was inactivated from TOP and recalled from a PCA.[3]  [Id.].

---

[2] A simple calculation is telling. The 2,300 borrowers remaining far exceeds Maximus Federal's ability to process 75 to 80 stop collection requests per day within the 5 day time period. [JA-955:9-20].

[3] Coast Professional, Inc. was the PCA assigned to collect Plaintiff's defaulted Student Loans. [JA_00024].

63. Plaintiff has not been subject to any offsets or collection actions by any third parties since the BD Received Tag was applied to her account. [JA-00018 - 19].

64. Just four (4) days before the application of the BD Received Tag, Plaintiff's 2018 tax refund in the amount of $79.00 was offset by Treasury. [Id.].

65. Plaintiff never had any communications with Maximus Federal in connection with her student loan accounts or her BD application. [JA-00007-00008.; JA-00829:4-6; 834; JA-00836:14-21].

66. After Plaintiff's 2018 tax refund was offset, Plaintiff claims she received a communication from Treasury confirming it had offset her 2018 tax refund. [JA-829:14-61:20; JA-00789].

67. In May 2019, Maximus Federal developed a corrective action plan ("CAP"), which is reviewed and approved by FSA to assist Maximus Federal in working through the continued backlog in the CEMS system. [JA-00599 - 00602].

68. The CAP identified the "root causes" of the continued CEMS backlog as: (i) the funding delays in February (2/25/2019) which prevented Maximus Federal "from working the items that were being submitted (2/25 – 3/11), thus creating a backlog of work;" (ii) the volume of BD applications which were "higher than historical volumes" and was not communicated to MFS; and (iii) the "security clearance issues" described above. [JA-00600 - JA-00602].

69. The CAP noted that Maximus Federal had "proactively hired" three additional employees to assist with this effort, but those employees could not be utilized until they received the "lengthy BI process and received system credentials." [JA-00600 – 00602; JA-00947:3-24].

70. Pursuant to the CAP, FSA authorized such steps as "mandatory overtime" and the utilization of support staff, allowing Maximus Federal to bring the processing of BD applications

within the DMCS system to the standard 5 business day period in June 2019. [JA_00944:11 - 00947:2; JA-00948:20-25].

### 3. Plaintiff's 2018 tax refund is subsequently provided to her by Treasury

71. On October 1, 2019, as a result of a lawsuit filed against FSA in the Central District of California, captioned *Manriquez v. Betsy Devos*, (the "Manriquez lawsuit"), FSA requested that Maximus Federal review certain identified accounts and potentially provide refunds of certain involuntary payments received after a date specified by FSA. [JA-00026-28].

72. Plaintiff's account was identified by FSA and Maximus Federal initiated the process of refunding her TOP offset at FSA's request through the DMCS system. [JA-00938:2 - 00939:25].

73. Plaintiff admits that the Treasury issued her a payment in the amount of $79.00 in October 2019, representing the full amount of her 2018 tax refund. [JA-00025; JA-836:23-837:5].

### 4. FSA's subsequent communications regarding the Manriquez Litigation and Maximus Federal's performance under the Contract

74. On or about October 9, 2019, Maximus Federal also received a letter from General Mark Brown, Chief Operating Officer of the FSA (the "General Brown Letter"). [JA-00628 - 00629].

75. The General Brown Letter requested that Maximus Federal conduct an analysis of its application of CR 4753 for a certain population of borrowers. [Id.].

76. Maximus conducted such analysis and provided two responses to the General Brown Letter. [JA-00584 - 00586; JA-00547 - 00551].

77. Initially its October 17, 2019 letter, after conducting a preliminary analysis, Maximus Federal identified that it had not been informed of the requirements associated with the orders in the Manriquez Litigation, and therefore, Maximus Federal was unable to work with FSA

to ensure that the processing complied with these orders (which differed from CR 4753 process). [JA-00878:14 – 00897:1].

78. Maximus Federal also determined that the majority of the allegedly affected borrowers identified on October 1, 2019 and on October 4, 2019 had either been processed correctly, were not assigned from CEMS to Maximus Federal, or were not associated with a Maximus Federal "processing error." [JA-00584 - 00586; JA-00547 – 00551].

79. Maximus Federal acknowledged that a small number of the identified accounts were affected by manual processing errors. [JA-00584 - 00586].

80. Subsequently, after conducting its full analysis, in its October 24, 2019 letter, Maximus Federal provided detailed information regarding the issues it identified. [JA-00547 - 00551].

81. Specifically, Maximus Federal explained that of the 33,559 relevant borrowers, only 181 of them were missing the relevant electronic tag on their accounts, approximately .4% of the total borrowers. [JA-00548].

82. Plaintiff's 2018 tax refund was identified as part of the Manriquez Litigation and this offset was eventually returned to her at the request of the FSA. [JA-00939:17-25].

83. While FSA's communication suggested it would "thoroughly relate poor performance in the Contractor Performance Assessment Reports for any failure to adhere to the CR," no such admonishment or alleged violation ever appeared in the relevant FSA entries into the Federal government's Contractor Performance Assessment Reporting System ("CPARS"). [JA-00314-00325].

84. In contrast, the relevant CPARS reports for 2019 identified Maximus Federal's performance as "satisfactory" and failed to identify any issues with Maximus Federal's processing of BD applications in the CEMS system.

                                                Respectfully submitted,

                                                **SAUL EWING ARNSTEIN & LEHR LLP**

                                                */s/ Marisa Rachel De Feo*
                                                Marisa Rachel De Feo
                                                Ryan L. DiClemente
                                                SAUL EWING ARNSTEIN & LEHR LLP
                                                Centre Square West
                                                1500 Market Street, 38th Floor
                                                Philadelphia, PA 19102
                                                (Tel) 215-972-1976
                                                Marisa.DeFeo@saul.com
                                                Ryan.DiClemente@saul.com
                                                *Attorneys for Defendant*

Dated: January 29, 2021