**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAIMARIA BODOR,<br>individually and on behalf of all others<br>similarly situated,<br><br>                              Plaintiff,<br><br>        vs.<br><br>MAXIMUS FEDERAL SERVICES, INC.,<br>                              Defendant. | CIVIL ACTION<br><br><br>NO.  5:19-cv-05787 (JMG) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR APPROVAL OF PROPOSED CLASS SETTLEMENT (UNOPPOSED)**

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ............................................................................................ 1

II.  FACTS ......................................................................................................... 1

III.  PROCEDURAL HISTORY ........................................................................... 4

IV.  ARGUMENT ................................................................................................ 6

   A.  Standard for approval of proposed class settlement ................................... 6

   B.  The Settlement is fair, reasonable, and adequate. ...................................... 9

      i.  Ms. Bodor and Class Counsel have adequately represented the Settlement Class ....... 9

      ii.  The Agreement was negotiated at arm's length. ....................................... 10

      iii.  The relief to the Settlement Class is adequate considering all relevant circumstances. ................................................................... 12

         1.  The costs, risks, and delay of trial and appeal. ....................................... 12

         2.  The effectiveness of any proposed method of distributing relief to the class. ........ 14

         3.  The terms and timing of any proposed award of attorney's fees ............................ 16

         4.  Any agreement required to be identified under Rule 23(e)(3). .............................. 17

      iv.  The proposal treats class members equitably relative to each other. ......................... 17

      v.  Other factors support the proposed Agreement. ....................................... 18

   C.  The Court will be able to certify the class for purposes of judgment on the proposed Agreement. ...................................................................... 19

      i.  The Class is so numerous that joinder is impracticable ............................... 20

      ii.  There are questions of law and fact common to the Class. ........................... 20

      iii.  Plaintiff's claim is typical of Class Members' claims. ................................... 21

      iv.  Plaintiff and her attorneys will adequately represent the interests of the Class. ........ 22

v.   The requirements for certification under Rule 23(b)(3) are met. ............................. 23

vi.   Common questions of law or fact predominate. ........................................................ 24

vii.   This class action is superior to other available methods for adjudicating this
dispute. ................................................................................................................................... 24

V.   CONCLUSION ................................................................................................................. 26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) .................................................................................. 19, 24

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds,*
    568 U.S. 455 (2013) ....................................................................................... 19

*Baby Neal for & by Kanter v. Casey,*
    43 F.3d 48 (3d Cir. 1994) .......................................................................... 19, 21

*Barenbaum v. Hayt, Hayt & Landau, LLC,*
    No. 18-4120, 2021 WL 120925 (E.D. Pa. Jan. 13, 2021) ............................... 18

*Barenbaum v. Hayt, Hayt & Landau, LLC,*
    No. CV 18-4120, 2021 WL 120925 (E.D. Pa. Jan. 13, 2021) ........................ 17

*Blandina v. Midland Funding, LLC,*
    303 F.R.D. 245 (E.D. Pa. 2014) ..................................................................... 20

*Boyle v. Progressive Specialty Ins. Co.,*
    326 F.R.D. 69 (E.D. Pa. 2018) ....................................................................... 20

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.,*
    867 F.3d 434 (3d Cir. 2017) ........................................................................... 20

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013) .......................................................................................... 24

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ........................................................................................ 19

*Erby v. Allstate Fire & Cas. Ins. Co.,*
    No. 18-4944, 2022 WL 14103669 (E.D. Pa. Oct. 24, 2022) .......................... 14

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982) ........................................................................................ 21

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975) ..................................................................... passim

*Harlan v. Transworld Sys., Inc.,*
    302 F.R.D. 319 (E.D. Pa. 2014) ..................................................................... 20

*In re Cmty. Bank of N. Va.*,
  418 F.3d 277 (3d. Cir. 2005) ........................................................................... 21

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008) ............................................................................ 24

*In re Nat'l Football League Players Concussion Inj. Litig.*,
  821 F.3d 410 (3d Cir. 2016) ....................................................................... 21, 22

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ..................................................................... 8, 9, 24

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) .............................................................................. 6

*Luxama v. Ironbound Express, Inc.*,
  No. 11-2224, 2022 WL 1773738 (D.N.J. June 1, 2022) ..................................... 14

*Marcus v. BMW of North America, LLC*,
  687 F.3d 583 (3d Cir. 2012) ............................................................................ 23

*McRobie v. Credit Prot. Ass'n*,
  No. 5:18-CV-00566, 2020 WL 6822970, (E.D. Pa. Nov. 20, 2020) ................ 11, 16

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) ............................................................................ 21

*Robinson v. Enhanced Recovery Co.*,
  No. 18-441, 2020 WL 5554481(E.D. Pa. Sept. 16, 2020) ................................... 6

*Rodriguez v. Nat'l City Bank*,
  726 F.3d 372 (3d Cir. 2013) ............................................................................ 20

*Serrano v. Sterling Testing Sys., Inc.*,
  711 F. Supp. 2d 402 (E.D. Pa. 2010) ................................................................ 25

*Somogyi v. Freedom Mortg. Corp.*,
  495 F. Supp. 3d 337 (D.N.J. 2020) ................................................................ 7, 8

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) ............................................................................ 20

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ....................................................................... 19, 23

*Weiss v. York Hosp.*,
   745 F.2d 786 (3d Cir. 1984) ........................................................................... 20, 25

**Statutes**

15 U.S.C. § 1692 ................................................................................................... 1

15 U.S.C. § 1692k(a)(2)(B) ........................................................................... 17, 21

15 U.S.C. § 1692k(b)(2)(B) ................................................................................ 18

**Other Authorities**

2018 Advisory Committee Notes to Fed. R. Civ. P. 23 .................................. passim

BLACK'S LAW DICTIONARY (11th ed. 2019) ..................................................... 11

USAspending.gov, Award Profile Contract Summary for Maximus Federal Services, Inc.,
   https://www.usaspending.gov/award/CONT_AWD_EDFSA13C0021_9100_-NONE-_-
   NONE- (last accessed July 18, 2023) ............................................................... 2

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................... 19, 22, 23

Fed. R. Civ. P. 23(a)(1) ...................................................................................... 20

Fed. R. Civ. P. 23(a)(3) ...................................................................................... 21

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 22

Fed. R. Civ. P. 23(b) .......................................................................................... 19

Fed. R. Civ. P. 23(b)(3) ......................................................................... 19, 23, 24

Fed. R. Civ. P. 23(e) ............................................................................................ 6

Fed. R. Civ. P. 23(e)(1)(B) ....................................................................... 6, 19, 26

Fed. R. Civ. P. 23(e)(2) ..................................................................................... 6, 7

Fed. R. Civ. P. 23(e)(2)(B) ................................................................................ 10

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................ 12

Fed. R. Civ. P. 23(e)(3) ...................................................................................... 12

Fed. R. Civ. P. 23(g)(1)(A) ................................................................................................................ 22

## I.     INTRODUCTION

Plaintiff Jaimaria Bodor ("Bodor" or "Plaintiff") filed this consumer class action alleging, on behalf of herself and others similarly situated, that Maximus Federal Services, Inc. ("Maximus Federal") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. by causing these borrowers' tax refunds to be withheld in violation of their federal rights, and by misrepresenting the status of borrowers' debts to the U.S. Department of Treasury ("Treasury"). After more than three years of litigation during which the parties reviewed thousands of pages of discovery and completed pretrial dispositive motion practice, the parties reached a class-wide settlement.  The written settlement agreement ("Agreement") is attached as Exhibit 1.

The proposed Agreement provides that each of the 274 borrowers in the Class will be sent a check for $165—an amount intended to compensate the Class Members for their temporary loss of funds. Ex. 1, Agreement § III.F.1.  The checks will be sent by a professional settlement administrator hired at Maximus Federal's expense. *Id.* § III.D.  As is common in this Court, the proposed Agreement provides for a service award to Ms. Bodor of $10,000. *Id.* § III.I.  As the FDCPA is a fee-shifting statute, the proposed Agreement also provides for payment of $190,000 in combined attorney fees and costs. *Id.* § III.H.

Plaintiff accordingly brings this Motion to preliminarily approve the proposed Agreement to settle on a class-wide basis and to notify the Class of the proposal, along with their right to object and opt out, pursuant to Federal Rule of Civil Procedure 23(e)(1)–(2).

## II.    FACTS

The Court is already familiar with the facts of Ms. Bodor's claim, having authored a 15-page Memorandum Opinion denying Maximus Federal's Motion for Summary Judgment. ECF 97. Plaintiff incorporates those facts by reference, but highlights some pertinent facts below.

For almost a decade, Maximus Federal has been contracted to operate and maintain the United States Department of Education's ("DOE") Debt Management and Collection System ("DMCS").  ECF 97 at p. 2. Under its contract,[1] Maximus Federal committed to electronically tagging borrower accounts who submitted Borrower Defense to Repayment Applications and may not therefore be eligible for involuntary collection of outstanding federal student loan debts—including through the Department of Treasury's ("Treasury") Treasury Offset Program ("TOP"). *Id.* at pp. 2, 15.

In 2012, a now-defunct online school misled Ms. Bodor to believe she would receive two Pell grants toward a business degree at the school. Ex. 2, Bodor Deposition at 39:22–41:10. But the so-called "grants" were actually federal student loans, and the school closed only a year later. *Id.* at 22:13–24:12, 39:22–41:10.  The shuttered school ultimately left Ms. Bodor saddled with thousands of dollars in student loan debt. *See* Ex. 3, Bodor_000108–000110 (showing loan amounts of $6,000 and $3,500).

In the years that followed, Ms. Bodor had over $2,000 offset through TOP to pay off the federal student loan debt. Ex. 4, Maximus_000184.  She eventually learned that she could stop collections and have her student loans considered for forgiveness by submitting a Borrower Defense ("BD") application to DOE. Ex. 2, Bodor Dep. at 26:18–27:16.  Indeed, DOE regulations prohibit collection activity on the loans of borrowers who submit BD applications until the borrower's claim is resolved, or the borrower elects to proceed with collections. 34 C.F.R. § 685.222(e)(2)(ii).

---

[1]      USAspending.gov, Award Profile Contract Summary for Maximus Federal Services, Inc., https://www.usaspending.gov/award/CONT_AWD_EDFSA13C0021_9100_-NONE-_-NONE-      (last accessed July 18, 2023) (noting a current award of $778.9 million and a potential award of $890.8 million).

In its contract with DOE, Maximus Federal agreed it would apply an electronic "tag" to a certain volume of borrower accounts to reflect the DOE's receipt of a BD application submission within five business days of receiving notice from a different government contractor. ECF 97 at p. 15.  This electronic "tag" generated notice from DMCS which put Treasury on notice to stop all collection activity—including TOP offsets of federal tax refunds—until the borrower's claim is resolved. *Id.* at pp. 8–9.

Notwithstanding that commitment, dozens of borrowers who submitted BD applications had their federal tax refunds seized and held for months before reimbursements were initiated because Maximus Federal allegedly failed to comply with its contractual obligation to electronically tag accounts.   Indeed, at the time, Maximus Federal told ED in a letter that it did not tag 135 borrower accounts with pending BD applications, citing the root cause as "[p]rocessing errors due to manual entry." Ex. 5, Maximus Federal letter to ED, JA-00548.  With respect to Ms. Bodor's account, Maximus Federal did not electronically tag her account until four days *after* the TOP offset of her 2018 tax refund of $79. ECF 97 at p. 5.  Maximus Federal maintains it has a viable defense and basis for the delay.

Discovery has revealed that TOP offsets would sometimes occur before the five-business-day period in which Maximus Federal had to tag a borrower's account.  At times, TOP offsets would occur before Maximus Federal received notice of a borrower's BD application from a separate third-party government contractor, *i.e.* before it received a "Start Forbearance Request." As part of settlement negotiations, the parties agreed to limit the Settlement Class to only those persons whose accounts Maximus Federal failed to tag within DMCS for a BD application within five business days of receiving notice, and who thereafter experienced a TOP offset.   This

narrowed the scope of the Class to only those borrowers who could potentially claim injury from Maximus Federal's alleged failure to comply with its contract with DOE.

### III.   PROCEDURAL HISTORY

On December 9, 2019, Ms. Bodor filed this class action on behalf of herself and others similarly situated.  An Amended Complaint was filed on May 14, 2020. Maximus Federal filed an Answer with Affirmative Defenses to the Amended Complaint, asserting, among other things, affirmative defenses including, *inter alia*: "Plaintiff cannot state a claim under the FDCPA because the *bona fide* error defense in 15 U.S.C. § 1692k(c) applies," and "Plaintiff's claims are barred by the government contractor defense." ECF 33, at p. 13.

The parties set an early merits determination on Plaintiff's individual FDCPA claim and agreed to initially proceed with discovery on Plaintiff's claim, followed by dispositive motion practice on her claim. ECF 26.  The parties also agreed that "Phase I, Part A Discovery" would be limited to whether Ms. Bodor has standing, whether Maximus Federal's conduct with respect to Ms. Bodor violated the FDCPA, and whether the government contractor immunity defense applies. *Id.* at p. 2.  Finally, the parties agreed to a 90-day period of class discovery ("Phase I, Part B Discovery") for completion *after* the filing of any motion for summary judgment. *Id.* at p. 3.

Phase I, Part A Discovery involved examination of nearly 6,000 pages of detailed documents, including communications between federal officials and Maximus Federal regarding Maximus Federal's alleged wrongful acts which led Treasury to offset tax refunds through TOP. Ex. 6, Rossman Declaration ¶ 12.  The discovery phase was complicated and challenging—which resulted in the need for multiple extensions of the deadlines for Phase I, Part A Discovery and summary judgment motions.  *Id.* During that time, Plaintiff took the depositions of two defense witnesses, and Defendant took Plaintiff's deposition. *Id.*

4

On January 15, 2021, Maximus Federal filed a Motion to Stay class discovery indefinitely pending the resolution of any motion for summary judgment. ECF 57.  Plaintiff opposed. ECF 59. The Court granted the motion in part, staying discovery until May 20, 2021 instead of imposing the indefinite stay sought by Maximus. ECF 67.

On February 3, 2021, Maximus Federal filed a Motion for Summary Judgment as to Plaintiff's Individual Claims. ECF 64.  Maximus Federal argued, among other things, that it has immunity as a government contractor, that it did not engage in "collection activity" subject to the FDCPA, that any violation of the FDCPA was the result of a *bona fide* error, and that it otherwise did not violate the FDCPA. *See id.* Opposing summary judgment required Plaintiff to respond to numerous novel arguments raised by Maximus.

On October 22, 2021, the Court denied Defendant's Motion for Summary Judgment, holding that genuine disputes of material fact precluded summary judgment on whether Maximus Federal violated the FDCPA. *See* ECF 97–98.

The case then proceeded to class discovery, which required the deposition of Maximus Federal 's designee and review of hundreds of more documents bearing on class certification. Ex. 6, Rossman Declaration ¶ 13.  Shortly before the deadline to move for class certification, the parties agreed to proceed with a settlement conference, and to stay the case in the interim. *Id.* ¶ 15. Before the settlement conference, however, the parties were able to come to a partial agreement on class-wide settlement that would afford $165 to each of the class members. *Id.* ¶ 16.  The agreed upon Settlement Class is defined as:

> All borrowers in the United States who experienced an offset of federal tax refunds through the Treasury Offset Program after Maximus Federal failed to initially tag the borrower's account for stop collections within five business days of Maximus Federal first having notice of their BD application, from December 9, 2018, to April 30, 2023, excluding borrowers whose:

     a. Offset occurred before Maximus Federal received notice (before Start Forbearance Request);

     b. Account was tagged "(BD Received)" within 5 business days of the Start Forbearance Request;

     c. Offset occurred within the 5-business-day period within which Maximus Federal was to tag the account;

     d. Account was tagged later than 5 business days, but Offset occurred after date the tag was applied.

The counsel fees and costs portion of the settlement remained to be negotiated.[2]  With the assistance of Judge Carlos at a settlement conference held on February 2, 2023, the parties were able to reach a negotiated agreement on the counsel fee portion of the settlement. Ex. 6, Rossman Declaration ¶ 17.  The remainder of the settlement terms were negotiated among counsel and reduced to the written Agreement. *Id.* ¶ 18.

## IV.   ARGUMENT

### A.  Standard for approval of proposed class settlement

Under Federal Rule of Civil Procedure 23(e), the claims of "a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."  As all the class members would be bound by the proposed Agreement, the court must direct reasonable notice of the settlement if the parties show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).  In making class settlement determinations, courts must remain mindful that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

---

[2]    *See Robinson v. Enhanced Recovery Co.*, No. 18-441, 2020 WL 5554481, at *6 (E.D. Pa. Sept. 16, 2020) (plaintiff in class action settlement is "considered a prevailing plaintiff under the FDCPA" and therefore entitled to a counsel fee).

Under Rule 23(e)(2), the court may approve a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2).  In 2018, the settlement provisions of Federal Rule of Civil Procedure 23 were substantially revised with the goal of directing courts to consider a targeted "list of core concerns" to consider when determining whether to approve a proposed settlement. 2018 Advisory Committee Notes to Fed. R. Civ. P. 23. Courts are to consider whether:

> **(A)** the class representatives and class counsel have adequately represented the class;
>
> **(B)** the proposal was negotiated at arm's length;
>
> **(C)** the relief provided for the class is adequate, taking into account:
>
>> **(i)** the costs, risks, and delay of trial and appeal;
>>
>> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> **(iv)** any agreement required to be identified under Rule 23(e)(3); and
>
> **(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[3]

Additionally, prior to the 2018 Amendments, the Third Circuit in *Girsh* provided a list of factors to consider as a guide. *Somogyi*, 495 F. Supp. 3d at 348 (citing *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)). These factors include:

> (1) the complexity, expense and likely duration of the litigation;
>
> (2) the reaction of the class to the settlement;

---

[3]      "Subparagraphs (a) and (b) of Rule 23 address the 'procedural fairness' of the settlement, while subparagraphs (c) and (d) address 'substantive fairness.'" *Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 348 (D.N.J. 2020).

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and,

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157 (cleaned up). "These factors are merely a guide and the absence of one or more does not automatically render the settlement unfair." *Somogyi*, 495 F. Supp. 3d at 348.

The Third Circuit in *Prudential* points the parties to other considerations to address, when applicable, including:

(1) [T]he maturity of the underlying substantive issues...the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; (2) the existence and probable outcome of claims by other classes and subclasses; (3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved--or likely to be achieved--for other claimants; (4) whether class or subclass members are accorded the right to opt out of the settlement; (5) whether any provisions for attorneys' fees are reasonable; and (6) whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998).

The Advisory Committee Notes to the 2018 Amendments caution that the "lengthy list of factors" applicable in each Circuit "can take on an independent life, potentially distracting attention from the central concerns that inform the settlement-review process." Sometimes factors may not be relevant to a particular case, or only marginally relevant. *Id.* "The sheer number of

factors can distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." *Id.* Indeed, Plaintiff notes that most of the *Girsh* and *Prudential* factors are subsumed by the Rule 23(e)(2) factors (except for the "reaction of the class," which is a consideration that is deferred until the final approval hearing, after Class Notice is issued and the Class Members have had the opportunity to object or exclude themselves).

Plaintiff accordingly begins the analysis with the considerations required by Rule 23(e)(2), mindful of the related considerations specified in *Girsh* and *Prudential*.

### B. The Settlement is fair, reasonable, and adequate.

#### i. Ms. Bodor and Class Counsel have adequately represented the Settlement Class.

The Settlement Class is represented by specialized counsel focusing on federal student loan litigation—namely, the National Consumer Law Center ("NCLC") of Boston, MA, and Justice Catalyst Law ("JCL") of New York, NY. Their special expertise and knowledge regarding the federal student loan industry was crucial to the successful resolution of this litigation. NCLC and JCL were joined by Flitter Milz, P.C. of Narberth, PA, experienced litigators in the area of consumer law. Collectively, the three firms have spent over 1,000 hours on this litigation. Ex. 6, Rossman Declaration ¶ 19.

And not without results. As mentioned, Maximus Federal agreed to waive its right to proceed with class certification first, preferring instead to proceed with the merits of Plaintiff's claim first. Plaintiff successfully defeated Maximus Federal's attempt to secure summary judgment on her claim, a positive development on the merits that should lend assurance to the Court and any class member about the adequacy of representation.

Plaintiff herself has very ably represented the Settlement Class. Ms. Bodor underwent a deposition, answered discovery, and remained in consistent contact with Class Counsel throughout

9

the litigation. Ex. 6 Rossman Declaration ¶ 20.  It bears note that Ms. Bodor turned down an individual settlement offer and remained steadfast in her desire to obtain fair class relief.  Had she not done so, the Settlement Class would not have this opportunity to favorably settle the case on a class-wide basis.

The record speaks for itself. Plaintiff and Class Counsel have adequately represented the Settlement Class. This factor favors settlement.

### ii.   The Agreement was negotiated at arm's length.

Rule 23(e) requires consideration of whether the settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B).  Relatedly, the Court of Appeals in *Girsh* has recognized relevant factors such as "the stage of the proceedings and the amount of discovery completed." *Girsh*, 521 F.2d at 157. The parties' Agreement was the result of over a year of arm's length negotiations, ultimately facilitated by a Magistrate Judge of this Court, but only after over three years of litigation.

Plaintiff has engaged in extensive discovery on her individual claim and with respect to class certification. During discovery on Plaintiff's individual claim, Maximus Federal produced over 6,000 pages of documents, which were reviewed in detail. Ex. 6, Rossman Declaration ¶ 12. Two Maximus Federal witnesses were deposed. *Id.* Maximus Federal moved for summary judgment on Plaintiff's individual claim, which this Court denied. ECF 98.  Plaintiff thereafter received Maximus Federal's responses to Plaintiff's class discovery, which entailed review of hundreds of additional documents. *Id.* ¶ 13.  As such, the stage of proceedings and ample discovery completed demonstrate that Plaintiff has an adequate appreciation of the case, which supports the instant settlement.

10

The Agreement was completed as the result of arm's length negotiations.[4] On May 3, 2022, before the conclusion of class discovery, the Court held a discovery status conference.  Ex. 6, Rossman Declaration ¶ 14.  Soon afterward, the parties began to discuss the possibility of a class-wide settlement under a revised class definition.  *Id.*

On June 22, 2022, the parties wrote to the Court to jointly request a settlement conference with a magistrate judge.  *Id.* ¶ 15.  The parties explained that the parties had already begun meaningful settlement negotiations and believed that continuing these negotiations before a magistrate judge would help the parties reach a class-wide resolution.  *Id.*  The Court issued Orders staying the case (ECF 117) and referring the matter to Magistrate Judge Carlos for a settlement conference (ECF 116), which was scheduled for October 31, 2022. ECF 120.

On October 28, 2022, Maximus Federal made a "final" counteroffer of $165 per class member and a service award of $10,000 to Ms. Bodor. Ex. 6, Rossman Declaration ¶ 16.  Plaintiff accepted.  *Id.* However, the parties understood that a settlement would not be culminated unless the parties also came to an agreement on a Class Counsel fee. *Id.*[5]

On February 2, 2023, Magistrate Judge Carlos held a settlement conference. *Id.* ¶ 17.  With the Court's substantial assistance, the parties were able to reach a final agreement on a Class Counsel fee–$190,000.  *Id.* In the months that followed, the parties continued negotiating the nonmonetary terms until a final written agreement was reached. *Id.* ¶ 18.  The parties executed the Agreement on July 5, 2023. *Id.*

---

[4]      "Black's Law Dictionary defines 'arm's length' as '[o]f, relating to, or involving dealings between two parties who are not related or not on close terms and who are presumed to have roughly equal bargaining power.'" *McRobie v. Credit Prot. Ass'n*, No. 5:18-CV-00566, 2020 WL 6822970, at *4 (E.D. Pa. Nov. 20, 2020) (quoting BLACK'S LAW DICTIONARY (11th ed. 2019)).

[5]      Maximus agreed to pay for litigation expenses, *i.e.* "Settlement Costs." Ex. 1, Agreement § III.D.

The settlement negotiations, which took place over the course of a year, were always at arm's length, and were effectively facilitated by an experienced magistrate judge.  This factor favors settlement.

### iii.  The relief to the Settlement Class is adequate considering all relevant circumstances.

This factor requires consideration of whether the class relief is adequate considering the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, the terms and timing of any proposed award of attorney's fees, and any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C).  All of these considerations support settlement.

### 1.  The costs, risks, and delay of trial and appeal.

Although the Court did not grant Maximus Federal summary judgment, continued litigation of the case is not without risk.  Filed in December 2019, the case is over three years old.  Class certification has yet to be determined, and a trial on liability and damages would almost certainly follow.  There would almost surely be an appeal, stretching out this litigation for years.

But for this settlement, Plaintiff would have to demonstrate over Maximus Federal's objection that class certification is proper.[6]  A jury trial always comes with risk.  Plaintiff would first have to prevail on liability and defeat Maximus Federal's several defenses, including that it has immunity as a government contractor, that it did not engage in "collection activity," and that any violation of the FDCPA was the result of a *bona fide* error. *See* ECF 67.  Maximus Federal continues to maintain that any delays in electronically tagging accounts in DMCS were the result of circumstances or parties outside its control.  While the Court denied Maximus Federal's Motion

---

[6]    Maximus does not oppose class certification for the purposes of carrying out the parties' Agreement, but would object to class certification if the case were to proceed.

for Summary Judgment, finding that material issues of fact remain, it is possible that the jury could side with Maximus Federal on any of these fact-bound defenses.

Even if Plaintiff prevails on liability, actual damages for the economic injury may be difficult to prove without expert testimony. For example, Ms. Bodor's $79 tax refund was not returned until five months after it was taken by Treasury, so any economic damages expert may have to opine on the time-value of money, the interest that could be accrued from the seized funds if such funds were put to good use, etc. The expert would have to do this for calculation for the entire class, adding to the costs of the case.

In addition to actual damages, the FDCPA provides for statutory damages, which are capped at the lesser of $500,000 or 1% of the debt collector's net worth. 15 U.S.C. § 1692k(b)(2)(B).[7] The amount of statutory damages awarded depends upon "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional." 15 U.S.C. § 1692k(b)(2).

Maximus Federal has argued in this litigation that its conduct was not intentional, and that this was an isolated event caused by a confluence of factors outside of Maximus Federal's control. These arguments, if credited, have the potential to decrease the damages that could be awarded, or negate recovery altogether.

All of these factors weighed into Plaintiff's decision to settle the case, which allows for class relief of $165 per Class Member. That amount represents a fair compromise in light of the inconvenience, distress, and other damages potentially experienced by each Class Member, who

---

[7]    Maximus Federal has admitted for purposes of this litigation that its net worth exceeds $50,000,000.

may have been forced to take out a payday loan, borrow money from friends or family, or make other sacrifices to account for unexpected seizure of their federal tax refunds.

The class recovery is adequate in light of the costs, risks, and delay of trial and appeal.

### 2. The effectiveness of any proposed method of distributing relief to the class.

Federal Rule of Civil Procedure 23(c)(2)(B) provides in pertinent part: "For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following:  United States mail, electronic means, or other appropriate means."  The 2018 rule amendment—expressly permitting notice by electronic or other appropriate means—was intended to provide parties and courts with the flexibility needed to tailor notice to the case before it, with due regard for effectiveness and efficiency under the circumstances. *See* Advisory Committee Notes to 2018 Amendments to Rule 23 ("Subdivision (c)(2) is also amended to recognize contemporary methods of giving notice to class members," as "technological change since 1974 has introduced other means of communication that may sometimes provide a reliable additional or alternative method for giving notice.").

As such, courts have approved notice programs providing for service by email, or a combination of email and U.S. mail. *See, e.g.*, *Erby v. Allstate Fire & Cas. Ins. Co.*, No. 18-4944, 2022 WL 14103669, at *10 (E.D. Pa. Oct. 24, 2022) (notice by mail and email satisfied due process); *Luxama v. Ironbound Express, Inc.*, No. 11-2224, 2022 WL 1773738, at *5 (D.N.J. June 1, 2022) ("the Court finds that the best notice practicable under the circumstances would include notice by first-class mail and electronic mail").

Instantly, the parties' proposed notice program entails notice by both mail and email (to the extent possible), at Maximus Federal's expense. Ex. 1, Agreement § III.E.2. Within fourteen (14) days of Preliminary Approval and Notice Order, Maximus will provide current mailing and email addresses for the Class Members from the DOE's DMCS system to the Settlement Administrator, Phoenix Class Action Administration Solutions.[8] *Id.* ("Settlement Administrator"). Prior to mailing of the Class Notice, the Settlement Administrator shall perform a search for each Class Member based on the National Change of Address Database for information to update and correct for any known or identifiable address changes. *Id.*

The Notice of Proposed Class Action Settlement ("Notice") that will be sent by First-Class mail and by email (when possible) is attached as Exhibit C to the Agreement. The Settlement Administrator will send the Notice within 60 days following the entry of the Preliminary Approval and Notice Order. Ex. 1, Agreement § III.E.2. The Notice advises that the Class Member has the right to object or exclude themselves from the Settlement.

Any notice packets returned to the Settlement Administrator as non-deliverable will be promptly resent via First-Class U.S. Mail to the forwarding address specified. *Id.* If no forwarding address is provided, the Settlement Administrator will use a skip-trace, or other search, of the proper address using the name, address, and/or Social Security number of the Class Member involved, and shall then perform a single re-mailing. *Id.*

---

[8]     The parties are awaiting approval from DOE to release the individual borrowers' email and address information from DMCS to the Claims Administrator. To the extent, DOE does not consent to the production of such information from DMCS prior to the end of the required 14-day period, the parties will direct the Class Administrator run skip traces for each Class Member identifying the relevant address for each. Maximus Federal has agreed to pay the additional expense for such skip tracing services if they become necessary.

Class counsel believes that this hybrid approach well-serves the goals of Rule 23, as amended:

> Instead of preferring any one means of notice, therefore, the amended rule [Fed. R. Civ. P. 23(c)(2)] relies on courts and counsel to focus on the means or combination of means most likely to be effective in the case before the court. . . . Counsel should consider which method or methods of giving notice will be most effective; simply assuming that the "traditional" methods are best may disregard contemporary communication realities.  The ultimate goal of giving notice is to enable class members to make informed decisions about whether to opt out.

Advisory Committee Note to 2018 Amendment to Rule 23(c)(2).

After final approval, all Class Members will be mailed a check for $165, without any need to file a claim form or otherwise take any further action.  Ex. 1, Agreement § III.F.1.  The proposed method of notice and distribution of class relief ensures that checks will be sent to Class Members at their current addresses, when available, and is more than adequate under the circumstances. Further, Class Members who receive the E-mail Notice will be able to contact the Settlement Administrator to update their address, and the E-Mail Notice so specifies. Ex. 1, Agreement § III.E.1.

### 3. The terms and timing of any proposed award of attorney's fees

The Agreement provides for Class Counsel fees of $190,000 and an individual service award of $10,000 to Ms. Bodor, both subject to court approval. Ex. 1, Agreement §§ III.H & III.I. These requested amounts are comparable to what has been approved by this Court and sister courts, including in FDCPA actions. *See, e.g.*, *McRobie v. Credit Prot. Ass'n*, No. 5:18-CV-00566, 2020 WL 6822970, at *2 (E.D. Pa. Nov. 20, 2020) (approving FDCPA settlement calling for $5,000 service award, $149,000 in fees, and a class fund of $40,000); *Barenbaum v. Hayt, Hayt & Landau,*

*LLC*, No. CV 18-4120, 2021 WL 120925, at *2 (E.D. Pa. Jan. 13, 2021) (approving FDCPA settlement calling for $7,800 service award, $114,000 in fees, and a class fund of $8,200).

Plaintiff will apply for such awards in connection with her Motion for Final Approval.

### 4. Any agreement required to be identified under Rule 23(e)(3).

Plaintiff has not entered into any agreements other than the Agreement for which she seeks Court approval. This factor supports approval.

### iv. The proposal treats class members equitably relative to each other.

Under the Agreement, all Class Members are set to receive checks in the identical amount of $165. Plaintiff acknowledges, however, that Class Members had tax refunds of varying amounts seized for different periods of time before they were eventually returned.[9] But, given the expense and potential complexities in calculating each Class Members economic damages, and the relatively minimal amount of economic damages experienced by some Class Members, Plaintiff primarily sought statutory damages for the Class under 15 U.S.C. § 1692k(a)(2)(B), which would have been shared among all Class Members in equal amounts if the case were to proceed to judgment. In this respect, it is both fair and equitable to afford Class Members the same monetary relief, constituting their equal share of the statutory damages.

Moreover, the $165 more than adequately compensates the average Class Member would receive for their economic loss. For example, a Class Member who had $2,117 seized for three months at Pennsylvania's rather generous prejudgment interest rate of 6% would be due $63.51 in interest. See footnote 9, *supra*. In this respect, the Agreement treats Class Members equitably, as

---

[9]    On average, Class Members were deprived of their tax refunds for a period of about 88 days, ranging from approximately 8 days to 617 days. Ex. 7, Declaration of Jody López-Jacobs ¶ 12. The average amount seized was about $2,117, ranging from approximately $26 to $16,606. *Id.* Ms. Bodor's $79 was seized for over five months. *Id.*

all stand to gain $165, reflecting their share of statutory damages, which likely exceeds their actual economic loss.

### v.  Other factors support the proposed Agreement.

As mentioned, revised Rule 23(e) addresses the core concerns that the Court should address when determining whether a proposed settlement is fair, reasonable, and adequate.  However, the Court in *Girsh* identify a few other factors that may provide guidance.  Plaintiff briefly addresses those here.

In *Girsh*, the court advised the parties to consider "(7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery." *Girsh*, 521 F.2d at 157. Here, Maximus Federal has admitted that its net worth is in excess of $50 million.  As a result, it is subject to the FDCPA's $500,000 cap on statutory damages. 15 U.S.C. § 1692k(b)(2)(B).  Although Maximus Federal certainly appears to have the ability to withstand a judgment greater than the aggregate settlement amount of $217,710,[10] this is essentially a nonfactor in this settlement, as Maximus Federal's solvency or lack thereof was not a primary consideration in Plaintiff reaching the Agreement. *See Barenbaum v. Hayt, Hayt & Landau, LLC*, No. 18-4120, 2021 WL 120925, at *4 (E.D. Pa. Jan. 13, 2021) (with this factor, "the Court considers whether a defendant's inability to pay led to a lesser financial settlement than would ordinarily be awarded").

Indeed, the best possible recovery to the class would have been limited to their economic damages of interest accrued during the seizure of the tax refunds, which could be relatively insignificant, and statutory damages subject to the high end of the statutory cap.  Although it is true that Plaintiff and the class could have potentially obtained more had they gone to trial, courts

---

[10]     The fund for the Class of 247 at $165 per member is $45,210.  The attorney fees and expenses sought total to $190,000, and the service award sought totals to $10,000.

are advised to "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

On the whole, these *Girsh* factors support the instant settlement.

### C. The Court will be able to certify the class for purposes of judgment on the proposed Agreement.

As part of this proposed settlement, Plaintiff must demonstrate "that the court will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23 permits a case to be maintained as a class action if the prerequisites of Rule 23(a) are satisfied and if the class meets the requirements of any of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994). On a motion for class certification, the "question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178 (1974); *accord Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).

The four threshold requirements of Rule 23(a) are: (i) numerosity ("the class is so numerous that joinder of all members is impracticable"); (ii) commonality ("there are questions of law or fact common to the class"); (iii) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (iv) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). *Baby Neal,* 43 F.3d at 55. As set forth below, the claims and defenses at issue in this FDCPA class action present a paradigmatic example of the sort of case that Rules 23(a) and 23(b)(3) are designed to vindicate.

19

### i.  The Class is so numerous that joinder is impracticable.

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that the class be "so numerous that joinder of all members is impracticable." *Weiss v. York Hosp.*, 745 F.2d 786, 808 (3d Cir. 1984). A class with more than 40 members will generally satisfy this requirement. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Maximus Federal has identified 247 federal student loan borrowers who fit within the class definition. *See* Ex. 1, Agreement § I.H, at Ex. A thereto. Numerosity is readily satisfied.

As an additional requirement, the Third Circuit has held that membership in the class, *vel non,* must be "currently and readily ascertainable based on objective criteria." *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 439 (3d Cir. 2017). "[A]t the certification stage, the plaintiff need not identify the actual class members. He need only show how class members *can* be identified." *Boyle v. Progressive Specialty Ins. Co.*, 326 F.R.D. 69, 83 (E.D. Pa. 2018) (*citing City Select Auto Sales Inc.*, 867 F.3d at 439).

Here, as mentioned, Maximus Federal specifically has identified the 247 borrowers who fit within the class definition. *See* Ex. 1, Agreement § I.H, at Ex. A thereto.  As such, the class is ascertainable. *See Blandina v. Midland Funding, LLC*, 303 F.R.D. 245, 250 (E.D. Pa. 2014); *see also Harlan v. Transworld Sys., Inc.*, 302 F.R.D. 319, 328 n.14 (E.D. Pa. 2014) (element met in FDCPA letter case where defendant "has already ascertained, from its records, the names and last known addresses of" class members).

### ii.  There are questions of law and fact common to the Class.

Rule 23(a)(2) commonality "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Sullivan*, 667 F.3d at 345 n.9.  The commonality requirement is satisfied if "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (quoting

*Baby Neal*, 43 F.3d at 56).  Not all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all Class Members. *Baby Neal*, 43 F.3d at 56-57.

This case involves common questions of fact and law.  The central issues in this case are: (1) whether Maximus Federal violated the FDCPA by failing to timely "tag" borrower accounts within DMCS after receiving notice of BD applications; and (2) whether and what amount of statutory damages are recoverable for Maximus Federal's violation. Statutory damages are determined class-wide; they are not individualized. 15 U.S.C. § 1692k(a)(2)(B).  Commonality is readily satisfied.

### iii.   Plaintiff's claim is typical of Class Members' claims.

The typicality requirement of Rule 23(a)(3) provides that the named plaintiff must "possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).  The commonality and typicality requirements of Rule 23 "tend to merge because they focus on similar aspects of the alleged claims." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001); *accord In re Cmty. Bank of N. Va.*, 418 F.3d 277, 303 (3d. Cir. 2005). Thus, much of the discussion above also demonstrates that Plaintiff meets Rule 23(a)(3)'s typicality standard, although the requirement must be evaluated separately. *Newton*, 259 F.3d at 183.

Our Court of Appeals has "set a 'low threshold' for typicality." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 428 (3d Cir. 2016).  Typicality is satisfied when the named plaintiff and class members' claims arise from similar legal or remedial theories or the same conduct by the defendant. *Id.*  "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Id.*

Plaintiff's legal theories are identical to those asserted on behalf of the putative class

members and arise out of the common practice of allegedly failing to electronically tag borrower accounts within DMCS after receiving notice of BD applications, resulting in the seizure of their federal tax refunds by Treasury.  There is no indication that the Plaintiff's interests diverge from the interests of the Class.  The typicality requirement of Rule 23(a) is satisfied.

### iv.  Plaintiff and her attorneys will adequately represent the interests of the Class.

Rule 23(a)(4)'s requirement of adequacy of representation consideration of the adequacy of both Plaintiff and her counsel to ensure that they are qualified and to root out potential conflicts of interest. *In re NFL*, 821 F.3d at 428.  As to the adequacy of class counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).[11] Plaintiff first addresses prongs (ii) – (iv) first, followed by (i), below.

Here, Class Counsel NCLC, JCL, and Flitter Milz, are highly experienced in consumer class action litigation. *See* Rossman Declaration, Ex. 6 ¶¶ 7–10, 19; Declaration of Jody López-Jacobs, Ex. 7 ¶¶ 3–4, 8; Declaration of Ben Elga, Ex. 8 ¶¶ 2–6.  Collectively, the three firms have decades of consumer class action experience and knowledge of the FDCPA.  Further, Class Counsel have the resources to commit to representing the class, and were prepared to pay the costs attendant to litigating this class case.

As for the first prong, Plaintiff spent over three years in litigation investigating the class

---

[11]     Plaintiff acknowledges that "a district court's decision to certify a class must *precede* the appointment of class counsel." *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010).  However, given the overlap between the Rule 23(a)(4) adequacy requirement and the standards for appointment of Class Counsel under Rule 23(g), Plaintiff addresses both in this section.

claims, ensuring Plaintiff's claim is indeed sufficiently similar the claims of other borrowers.  For example, it was discovered during litigation that TOP offsets by Treasury would sometimes occur before the five-business-day period in which Maximus Federal had to tag a borrower's account.  At times, TOP offsets by Treasury would occur before Maximus Federal had notice of a borrower's BD application.  The inclusion of borrowers who experienced TOP offsets by Treasury in these circumstances could potentially result in a finding that her claim is not typical, or that the issues of fact are not common.

As part of settlement negotiations, the parties agreed to limit the Settlement Class to only those persons whose accounts Maximus Federal failed to tag within DMCS for a BD application within five business days of receiving notice, and who thereafter experienced a TOP offset.  This narrowed the scope of the Class to only those borrowers who could claim injury from Maximus Federal's failure to comply with its contract with DOE to tag an account within DMCS within five business days.  This result could not be achieved but for Class Counsel's extensive review of Maximus Federal's contractual obligations, policies, and practices.

### v. The requirements for certification under Rule 23(b)(3) are met.

Having shown that the proposed class meets the Rule 23(a) threshold requirements—numerosity, commonality, typicality, and adequacy—the Plaintiff next has the burden to show that the proposed class satisfies one of the three subsections of Rule 23(b). *Sullivan*, 667 F.3d at 296. Under Rule 23(b)(3), an action that satisfies the threshold prerequisites for certification may be maintained as a class action if the court finds that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," Fed. R. Civ. P. 23(b)(3); (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," *id.*; and (3) the class is "currently and readily ascertainable based on objective criteria," *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 593 (3d Cir. 2012).

23

These requirements are met.

### vi.  Common questions of law or fact predominate.

Rule 23(b)(3) requires that the questions of law or fact common to all members of the Class predominate over questions pertaining to individual members. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008).  In other words, there should not be unique or individualized issues in the case which would predominate in a trial so as to overwhelm the class's case. *Id.* at 311–12.  The Supreme Court has long recognized that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625.

In this case, the predominant issue is that all Class Members were subjected to involuntary collections by Treasury despite submitting BD applications requesting that collection on their student loans be suspended. For all Class Members, Maximus Federal allegedly failed to timely tag their accounts within DMCS within five business days of having received notice of the BD application.  Common issues predominate as to damages as well, as each Class Member will receive a check for $165, avoiding a potentially complex claims-made process.  There are no individualized issues.[12]  Common issues predominate.

### vii.  This class action is superior to other available methods for adjudicating this dispute.

Plaintiff also satisfies the superiority requirement of Rule 23(b)(3).  Efficiency is a primary focus in determining whether a class action is the superior method for resolving the controversy presented. *In re Prudential*, 148 F.3d at 315. A class action is superior to other available methods

---

[12]     It also bears note that Maximus Federal's defenses, such as its "government contractor immunity" defense, apply equally to all Class Members regardless of their specific circumstances. However, Maximus Federal's defenses ultimately play no role under the parties' Agreement.

where a class resolution of the common issues among class members "outweighs the difficulties in management of separate and individual claims, and allows access to the courts for those who likely would not gain such access standing alone – particularly in light of the relatively modest amount of statutory damages." *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 413 (E.D. Pa. 2010). In this case, there is no better method available for the adjudication of the claims which might be brought by each individual debtor subjected to Maximus Federal's allegedly violative practices.

The Third Circuit has recognized the superiority of FDCPA class actions, where the individual's claim is relatively small, such as is the case here:

> "A significant benefit to claimants who choose to litigate their individual claims in a class-action context is the prospect of reducing their costs of litigation, particularly attorney's fees, by allocating such costs among all members of the class who benefit from the recovery." The Supreme Court also commented that "class actions … may permit the plaintiffs to pool claims which would be uneconomical to litigate individually. For example, this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in Court if a class action were not available." This cost-spreading can also enhance the means for private attorney general enforcement and the resulting deterrence of wrongdoing.

*Weiss*, 385 F.3d at 344-45 (cleaned up). One of the primary functions of the class suit is to provide a device for vindicating small claims. *Id.*; *Serrano*, 711 F. Supp. 2d at 413. Without certification of a class, these borrowers are unlikely to obtain any relief, as borrowers are unlikely to have the time, energy, or resources to commit to an individual lawsuit. The class action mechanism is the superior way to adjudicate this FDCPA case for the 274 consumer borrowers involved.

V.     **CONCLUSION**

The proposed Agreement of the parties is fair, reasonable, and adequate, and all of the requirements for class certification are met.  Accordingly, the Court should direct notice to the class in accordance with the proposed notice program described in Section IV.B.iii.2, *supra*. *See* Fed. R. Civ. P. 23(e)(1)(B).

DATED:  July 21, 2023

Respectfully submitted,

*/s/ Stuart T. Rossman* (BBO #430640)
Stuart T. Rossman (*Pro Hac Vice*)
Alpha Taylor (*Pro Hac Vice*)
National Consumer Law Center
7 Winthrop Square, 4th Floor
Boston, MA 02110
(617) 542-8010 tel.
(617) 542-8028 fax
srossman@nclc.org
ataylor@nclc.org

Cary L. Flitter
Jody Lopez-Jacobs
Flitter Milz, P.C.
450 N. Narberth Avenue
Narberth, PA 19072
(610) 822-0782 tel
(610) 667-0552 fax
cflitter@consumerslaw.com
jlopez-jacobs@consumerslaw.com

Benjamin D. Elga
JUSTICE CATALYST LAW, INC.
40 Rector Street, Floor 9
New York, NY 10006
Main: 518-732-6703
belga@justicecatalyst.org

Counsel for Plaintiff and the Class

26

## <u>CERTIFICATE OF SERVICE</u>

I, Jody T. Lopez-Jacobs, do hereby certify that a copy of the foregoing was served upon all counsel of record by CM/ECF electronic filing.

Date: 7/21/2023

*/s/ Jody T. López-Jacobs*
JODY T. LÓPEZ-JACOBS
**FLITTER MILZ, P.C.**
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(P) (610) 668-0011
(F) (610) 667-0552
Email: jlopez-jacobs@consumerslaw.com
**Attorney for Plaintiff**