# Exhibit 6

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAIMARIA BODOR,<br>individually and on behalf of all others similarly situated,<br>　　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>MAXIMUS FEDERAL SERVICES, INC.,<br>　　　　　　　　　　Defendant. | NO. 5:19-cv-05787-EGS |

### **DECLARATION OF STUART T. ROSSMAN**

I, STUART T. ROSSMAN, an attorney authorized to practice in this Court in this action, *pro hac vice*, do hereby certify and confirm:

1. I am an adult individual, authorized to practice in this Court, *pro hac vice*, and to serve as counsel for Plaintiff Jaimaria Bodor ("Bodor") and the putative class ("Plaintiff") in the above-captioned action pursuant to an Order of the Court dated February 24, 2020 (Docket No. 9). This Declaration is submitted in support of Plaintiff's Motion for Approval of Proposed Settlement.

2. I have been admitted to practice before the Massachusetts Supreme Court since 1978. I also am authorized to practice before the United States District Court for the District of Massachusetts (1979), the First Circuit Court of Appeals (1979), the United States Supreme Court (1984), the United States Court of Claims (1984), the Sixth Circuit Court of Appeals (2000), the Ninth Circuit Court of Appeals (2004), the Second Circuit Court of Appeals (2010), the Fourth Circuit Court of Appeals (2011); and the Federal District Court for the Western District of New York (2016). I presently am, and always have been, a member in good standing in every bar and court to which I have been admitted to practice law.

3.  I am a graduate of the Harvard Law School (J.D., *cum laude*, 1978) and the University of Michigan (B.A. *magna cum laude*, 1975).

4.  From 1978 to 1991 I was first an associate, and then a partner, in the litigation department at the Boston law firm of Gaston & Snow.  My practice consisted entirely of civil trial cases, including, but not limited to, litigation on behalf of consumers injured by unfair and deceptive business practices.

5.  From 1991 to 1999 I served as an Assistant Attorney General in the Massachusetts' Attorney General's Office.  From 1991 to 1995 I was Chief of the Trial Division, representing government agencies in a wide variety of civil litigation cases, primarily in defensive, but also in affirmative, matters.  The nature of the cases I supervised or tried included a full spectrum of tort and contract claims brought against the Commonwealth.  The practice also included representation of government agencies in employment disputes, environmental cases and civil rights violation claims.

6.  From 1995 to 1999 I was Chief of the Business and Labor Protection Bureau.  The then newly created Bureau focused on combating white-collar economic fraud through criminal and civil enforcement.  It consisted of the Insurance Fraud Division, the Unemployment Fraud Division, the Medicaid Fraud Control Unit and the Fair Labor and Business Practices Division.

7.  Since 1993 I have been a member of the adjunct faculty at the Northeastern School of Law teaching annual courses in Civil Trial Advocacy and serving as the Givelber Distinguished Lecturer on Public Interest Law in 2010.  Beginning in 2015 I have been a visiting lecturer at the University of Michigan Law School teaching a seminar on Consumer Class Actions. I also have lectured frequently and/or chaired litigation oriented educational programs for PLI, the American Association for Justice, the National Association of Consumer Advocates, the National Legal

Aid and Defenders Association, Massachusetts Continuing Legal Education, the Massachusetts Bar Association and the Boston Bar Association, among others.

8. On July 1, 1999, I became the Director of Litigation at the National Consumer Law Center ("NCLC") where I am responsible for coordinating and litigating cases on behalf of income qualified individuals, primarily in the areas of consumer financing, utilities regulation and affordable housing. In that capacity, I have been qualified to file appearances, *pro hac vice*, on behalf of consumers in numerous consumer cases, most often in complex or appellate litigation, including matters formerly or currently pending in the United States District Courts for the Eastern, Western and Southern Districts of New York, New Jersey, Eastern District of Pennsylvania, Puerto Rico, Georgia, Maine, Connecticut, Central District of Tennessee, Northern District of Illinois, Kansas, the Central and Northern Districts of California and the Western District of Washington. In addition, I have been qualified to file appearances, *pro hac vice*, on behalf of consumers in class actions filed in the state courts of California, Ohio, Rhode Island, Washington and Wisconsin. Finally, I have participated in numerous consumer cases filed in the United States District Court for Massachusetts and the courts of the Commonwealth of Massachusetts. From 2010-2016, I served on the Board of Directors of the National Association of Consumer Advocates and from 2013-2016 I co-chaired the organization.

9. NCLC has been referred to as the "leading non-profit low-income consumer advocacy organization in the country. Memorandum and Order, January 27, 1999, <u>Mazola, et al v. The May Department Stores Company</u>, United States District Court for the District of Massachusetts, 97-CV-10872-NG (J. Gertner). NCLC has been representing low-income consumers before government agencies, Congress and state legislatures since 1969. It has appeared in the United States Supreme Court and federal and state courts and has successfully presented many

important cases affecting consumer borrowers. It provides consultation and assistance to legal services, private and government attorneys in all fifty states. NCLC publishes a nationally acclaimed series of manuals on all major aspects of consumer credit and sales. It also conducts training sessions nationally on the rights of consumer borrowers for attorneys, paralegals and other counselors. NCLC works closely with lawyers representing low- income consumers, and with federal and state officials, labor unions, and community and civil rights organizations to promote justice for consumers. NCLC maintains offices in Boston, Massachusetts and Washington, D.C.

10. The Center's staff of over 60 permanent employees includes over 30 attorneys who possess over 250 cumulative years of specialized consumer law expertise. In addition, a changing mix of special projects attorneys, consultants, fellows, and temporary hires normally supplements the regular staff. NCLC is governed by a volunteer national board of directors that has included a past president of the American Bar Association, a former Arizona Solicitor General, as well as bar association representatives and clients from low-income communities.

11. I have been a counsel of record for the Plaintiff and the putative class in this action since its inception. Early in the proceedings the parties agreed that "Phase I, Part A Discovery" would be limited to whether Bodor has standing, whether the Defendant, Maximus Federal Services' ("Maximus") conduct with respect to Bodor violated the Fair Debt Collection Practices Act ("FDCPA"), and whether the government contractor immunity defense applies. Finally, the parties agreed to a 90-day period of class discovery ("Phase I, Part B Discovery") for completion *after* the filing of any motion for summary judgment.

12. Phase I, Part A Discovery involved examination of nearly 6,000 pages of detailed documents, including communications between federal officials and Maximus regarding

Maximus's alleged wrongful acts which led to the offsetting of tax refunds. The discovery phase was complicated and challenging—which resulted in the need for multiple extensions of the deadlines for Phase I, Part A Discovery and summary judgment motions. During that time, Plaintiff took the depositions of two defense witnesses, and Defendant took Plaintiff's deposition.

13. After the Court denied Defendant's Motion for Summary Judgment, holding that genuine disputes of material fact precluded summary judgment on whether Maximus violated the FDCPA, the case then proceeded to class discovery, which required the deposition of Maximus's designee and review of hundreds of more documents bearing on class certification.

14. On May 3, 2022, before the conclusion of class discovery, the Court held a discovery status conference. Soon afterward, Maximus expressed an interest in a class-wide settlement under a revised class definition.

15. On June 22, 2022, the parties wrote to the Court to jointly request a settlement conference with a magistrate judge. The parties explained that the parties had already begun meaningful settlement negotiations and believed that continuing these negotiations before a magistrate judge would help the parties reach a class-wide resolution. The Court issued Orders staying the case (ECF 117) and referring the matter to Magistrate Judge Carlos for a settlement conference (ECF 116), which was scheduled for October 24, 2022 (ECF 120).

16. On October 28, 2022, Maximus made a "final" counteroffer of $165 per class member and a service award of $10,000 to Ms. Bodor. Plaintiff accepted. However, the parties understood that a settlement would not be culminated unless the parties also came to an agreement on a Class Counsel fee.

17. On February 2, 2023, Magistrate Judge Carlos held a settlement conference. With the Court's substantial assistance, the parties were able to reach a final agreement on a Class Counsel fee–$190,000.

18. In the months that followed, the parties continued negotiating the nonmonetary terms until a final written agreement was reached. The parties executed the Settlement Agreement on July 5, 2023.

19. NCLC and our co-counsel, Justice Catalyst Law ("JCL") have special expertise and knowledge regarding the federal student loan industry that was crucial to the successful resolution of this litigation. NCLC and JCL were joined by Flitter Milz, P.C. of Narberth, PA, experienced litigators in the area of consumer law and practice in this Court. Collectively, the three firms have spent over 1,000 hours on this litigation.

20. Plaintiff herself has very ably represented the Settlement Class. Ms. Bodor underwent a deposition, answered discovery, and remained in consistent contact with Class Counsel throughout the litigation. It bears note that Ms. Bodor turned down Maximus's offer to settle her individual claim for $30,000. But for her steadfast focus on obtaining fair class relief, the Settlement Class would not have this opportunity to favorably settle the case on a class-wide basis.

Signed under the pains and penalties of perjury this 19th day of July 2023.

Stuart T. Rossman, BBO No. 430640
National Consumer Law Center
7 Winthrop Square 4th Fl.
Boston, MA 02110
(617)542-8010
srossman@nclc.org