IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAIMARIA BODOR,<br>individually and on behalf of all others similarly situated,<br>　　　　　　　　　　　Plaintiff,<br>　　vs.<br>MAXIMUS FEDERAL SERVICES, INC.,<br>　　　　　　　　　　　Defendant. | CIVIL ACTION<br><br>NO.  5:19-cv-05787 (JMG) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR APPROVAL OF ATTORNEY FEES AND SERVICE AWARD**

**I.    INTRODUCTION**

By Order dated August 7, 2023 (ECF 134), this Court granted Plaintiff Jaimaria Bodor's Motion for Approval of Class Action Settlement.  The Settlement Agreement called for payment of attorney fees in the total amount of $190,000 for all work that has and will be performed by Plaintiff's counsel: the National Consumer Law Center ("NCLC"), Justice Catalyst Law ("JCL"), and Flitter Milz, PC ("Flitter Milz").  Ex. 1, Settlement Agreement § III.H. That amount reflects the parties' compromise, as Plaintiff's counsel's aggregate lodestar exceeds $550,000.  Ex. 2, Certification of Stuart Rossman ¶ 15. The Settlement Agreement also called for payment of a $10,000 service award to Ms. Bodor, in recognition of her service to the Class. Ex. 1, Settlement Agreement § III.I.  These amounts are to be paid by Maximus directly, and have no impact on the compensation to the Class—$165 to each Class Member in recognition of the damages they incurred for the temporary but wrongful seizure of their tax refunds.

Notwithstanding the parties' agreement on the attorney fees and service award, these amounts are subject to court approval after notice to the Class. Fed. R. Civ. P. 23(h).  Class Members were advised of the amounts of the requested attorney fee and service award, but to date,

1

not a single Class Member has objected. Plaintiff accordingly moves for the approval of attorney fees in the amount of $190,000, and for Plaintiff's service award in the amount of $10,000.[1]

## II.    LITIGATION OF THE CASE TO SETTLEMENT

The parties' Settlement Agreement was the result of over a year of arm's length negotiations, ultimately facilitated by a Magistrate Judge of this Court, but only after over three years of litigation.

The parties agreed to initially proceed with discovery regarding Bodor's individual FDCPA claim, followed by dispositive motion practice. *See* ECF 26. The parties also agreed that "Phase I, Part A Discovery" would be limited to whether Bodor has standing, whether Maximus's conduct with respect to Bodor violated the FDCPA, and whether the government contractor immunity defense applies. *Id.* at p. 2. Finally, the parties agreed to a 90-day period of class discovery ("Phase I, Part B Discovery") for completion after the filing of any motion for summary judgment. *Id.* at p. 3.

During Phase I, Part A Discovery, Maximus asserted that it was unable to produce relevant, non-privileged documents because it claimed it needed permission from the Department of Education to share this information. Plaintiff ultimately filed a Motion to Compel (ECF 43). After a telephonic hearing with Judge Gallagher, Maximus voluntarily produced the requested documents.

Unsurprisingly, Phase I, Part A Discovery involved examination of nearly 6,000 pages of detailed documents, including communications between federal officials and Maximus regarding Maximus's alleged wrongful acts which led to the improper offsetting of tax refunds through the

---

[1] With her Motion for Final Approval of Class Action Settlement, Plaintiff will provide a proposed Order of Final Approval addressing the relief sought in this Motion.

2

Department of Treasury Offset Program. Maximus designated the great majority of these documents as confidential pursuant to the Protective Order adopted by the Court.

The discovery phase was complicated and challenging—which resulted in delays and the need for multiple extensions of the deadlines for Phase I, Part A Discovery and summary judgment motions. During that time, Plaintiff took the depositions of two defense witnesses, and Defendant took Plaintiff's deposition.

On January 15, 2021, Maximus filed a Motion to Stay class discovery indefinitely pending the resolution of any motion for summary judgment. *See* ECF 57. Plaintiff opposed. ECF 59. The Court granted the motion in part, staying discovery until May 20, 2021 instead of imposing the indefinite stay sought by Maximus. *See* ECF 67.

On February 3, 2021, Maximus filed a Motion for Summary Judgment as to Plaintiff's Individual Claims (ECF 64). Maximus argued, among other things, that it has immunity as a government contractor, that it did not engage in "collection activity," that any violation of the FDCPA was the result of a *bona fide* error, and that it otherwise did not violate the FDCPA. Opposing summary judgment was a daunting task requiring the plaintiff to respond to numerous novel arguments raised by Maximus. The task was made further complicated administratively given the numerous confidentiality designations made by Maximus which constrained Plaintiff to file her opposition under seal. ECF 80. Plaintiff thereafter filed a Motion to Unseal Summary Judgment Record (ECF 68).

On October 8, 2021, the Court granted in part Plaintiff's Motion to Unseal Summary Judgment Record, effectively unsealing the entire summary judgment record. ECF 96. On October 22, 2021, the Court denied Defendant's Motion for Summary Judgment, holding that genuine

disputes of material fact precluded summary judgment on whether Maximus violated the FDCPA. *See* ECF 97-98.

The case then proceeded to class discovery, which required the deposition of Maximus's designee and review of hundreds of more documents bearing on class certification. On May 3, 2022, before the conclusion of class discovery, the Court held a discovery status conference. Ex. 2, Rossman Cert. ¶ 8. Soon afterward, Maximus expressed an interest in a class-wide settlement under a revised class definition. *Id.*

On June 22, 2022, the parties wrote to the Court to jointly request a settlement conference with a magistrate judge. *Id.* ¶ 9. The parties explained that the parties had already begun meaningful settlement negotiations and believed that continuing these negotiations before a magistrate judge would help the parties reach a class-wide resolution. *Id.* The Court issued Orders staying the case (ECF 117) and referring the matter to Magistrate Judge Carlos for a settlement conference (ECF 116) which was scheduled shortly thereafter. ECF 120.

On October 28, 2022, Maximus made a counteroffer of $165 per class member and a service award of $10,000 to Ms. Bodor. Ex. 2, Rossman Cert. ¶ 10. Plaintiff accepted. *Id.* However, the parties understood that a settlement would have to address statutory counsel fees for Class Counsel. *Id.*[2]

On February 3, 2023, Magistrate Judge Carlos held a settlement conference. *Id.* ¶ 11. With the Court's substantial assistance, the parties were able to reach a final agreement on a Class Counsel fee–$190,000. *Id.* In the months that followed, the parties continued negotiating the

---

[2]   Maximus agreed to pay for administrative expenses, *i.e.* "Settlement Costs." Ex. 1, Agreement § III.D.

4

nonmonetary terms until a final written agreement was reached. *Id.* ¶ 12. The parties executed the Agreement on July 5, 2023. *Id.*

The settlement negotiations, which took place over the course of a year, were always at arms' length, and were effectively facilitated by Magistrate Judge Carlos. *Id.* ¶ 13.

### III.     ARGUMENT

#### A. Class Counsel's Fees are Reasonable and should be Approved.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The attorney fees sought here are called for under the FDCPA at 15 U.S.C. § 1692k(a)(3) and under the parties' Settlement Agreement. Ex. 1, Settlement Agreement § III.H.

"An award of attorney's fees is not discretionary under the [FDCPA]. It is mandated." *Homer v. Law Offices of Frederic I. Weinberg & Associates, P.C.*, 2018 WL 2239556, at *1 (E.D. Pa. May 16, 2018). This encourages the enforcement of the FDCPA through "private attorneys general." *Graziano v. Harrison*, 950 F. 2d 107, 113–14 (3d Cir. 1991) (abrogated on other grounds); *see also* MANUAL FOR COMPLEX LITIGATION § 14.13 (4th Ed. 2004) (statutory fee shifting "serves the public policy of encouraging private enforcement").

Our Court of Appeals has held that Congress "provided fee shifting to enhance enforcement of important civil rights, consumer protection and environmental policies." *Student Pub. Interest Research Group of NJ, Inc. v. AT&T Bell Labs*, 842 F.2d 1436, 1449 (3d Cir. 1988); *see also Goins v. JBC & Associates, P.C.*, 2005 WL 3536147 (D. Conn. Nov. 28, 2005) ("[A]n award of attorney's fees under the FDCPA is designed not only for plaintiff's benefit but also to serve as a deterrent to defendants and others similarly situated."). Because the consumer credit statutes often involve small amounts of money even when important legal protections are in issue, courts have long

recognized that attorney fees incurred will often be larger than the pure dollar component of a recovery. For that reason, there is no requirement that the amount of attorney fees awarded be proportionate to the amount of recovery. *See Washington v. Philadelphia Court of Common Pleas* 89 F.3d 1035, 1041-42 (3d Cir. 1996) (civil rights case); *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 311 (3d Cir. 2008) (ERISA case); *Morris v. I.C. Sys., Inc.*, No. 06-2133, 2009 WL 1362594 (E.D. Pa. May 15, 2009) (FDCPA case). As one court put it, "the whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." *Millea v. Metro-North R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011) (emphasis in original).

"The lodestar method is used in statutory-fee-shifting cases" such as this arising under the FDCPA. *Barenbaum v. Hayt, Hayt & Landau, LLC*, No. 18-4120, 2021 WL 120925, at *5 (E.D. Pa. Jan. 13, 2021). This is *not* a percentage-of-recovery or common fund case where counsel fees come out of the class recovery. Under the lodestar method, the statutory fee award is calculated based multiplying the attorneys' hourly rates by the number of hours reasonably expended on the case. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005). "The product of this calculation 'is a presumptively reasonable fee[.]'" *Hahnemann Univ. Hosp.*, 514 F.3d at 310. Plaintiff bears the burden of demonstrating that the fee request is reasonable. *Barenbaum*, 2021 WL 120925, at *5.

The rates sought here, as well as the time spent on the case, were reasonable and necessary.

### i. Class Counsel's Hourly Rates are Reasonable.

The reasonable hourly rate is calculated according to the prevailing market rate in the relevant community. *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001). The "current market rate … is the rate at the time of the fee petition." *Lanni v. New Jersey*, 259 F.3d 146, 149-50 (3d Cir. 2001); *Davis v. Riddle*, 579 F.Supp.2d 692, 694 (E.D. Pa. 2008) (FDCPA

class case).

"Generally, the relevant community is the forum of the litigation." *Homer*, 2018 WL 2239556, at *2 (quoting *Interfaith Cmty. Org.*, 426 F.3d at 705). Here, the relevant community is the Eastern District of Pennsylvania.

The Third Circuit, however, has recognized that the forum rate may not apply when there is a need for specialized counsel from another district, in which case counsel's home forum rate is used. *See Pub. Interest Research Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1186 (3d Cir. 1995) (quoting Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 260–62 (1986)) ("forum rate" rule does not apply if "the need for 'the special expertise of counsel from a distant district' is shown or when local counsel are unwilling to handle the case"); *see also Hyman v. Devlin*, No. 3:17-89, 2019 WL 2271113, at *9 (W.D. Pa. May 28, 2019) (holding "the exception to the forum-rate rule applies" and awarding Flitter Milz's EDPA rates in WDPA case given the specialized nature of the case). Class Counsel NCLC and JCL bring special knowledge and expertise on federal student loan litigation, which was crucial to the successful resolution of this litigation. As such, NCLC's Boston rates, and JCL's New York rates, apply.

In any event, the rates sought here are all reasonable market rates for the Eastern District of Pennsylvania and should be approved.[3] In support, Plaintiff provides the following evidence:

### 1. Certifications of Class Counsel's Experience.

Class Counsel NCLC, JCL, and Flitter Milz, are highly experienced in consumer class action litigation. Class Counsel submit their detailed certifications in support of this motion as Exhibits 2 through 5. A brief description of their experience is outlined below.

With respect to Flitter Milz, courts in this district have acknowledged the firm's ample

---

[3] Class Counsel's hourly rates are set listed in Mr. Rossman's Declaration at ¶ 16.

experience in consumer litigation and class actions. *See, e.g.*, *Homer v. L. Offs. of Frederic I. Weinberg & Assocs., P.C.*, No. 17-880, 2018 WL 2239556, at *3 (E.D. Pa. May 16, 2018) (noting "Flitter's tenure and experience in the consumer litigation field"); *Harlan v. Transworld Sys., Inc.*, No. 13-5882, 2015 WL 505400, at *4 (E.D. Pa. Feb. 6, 2015) (Flitter and Milz "are experienced class action litigators under federal consumer protection laws such as the FDCPA").

Cary Flitter of Flitter Milz brings with him decades of experience litigating cases in this district, with his primary focus being consumer class actions. Ex. 3, Flitter Certification ¶¶ 28–29. Flitter is a contributing author to treatises including PENNSYLVANIA CONSUMER LAW by Carter, Geo. Bisel Publishing Co. (2002 ed., Suppl. 2023), the leading authority on the subject. *Id.* ¶ 29. He is regularly invited to lecture around the country on consumer law subjects. *Id.*

Mr. López-Jacobs has been litigating consumer cases in this district for over six years. Ex. 4, López-Jacobs Certification ¶ 2. He graduated in the top tier of his class at Temple Law and spent a year as a judicial law clerk to U.S. District Judge Mark A. Kearney, before joining Flitter Milz, PC, where he has practiced since 2017. *Id.* ¶ 4. In his relatively short time in private practice, Mr. López-Jacobs has been approved as class counsel in well over a dozen class actions. *Id.* ¶ 3. He has been named as a Super Lawyers Rising Star for three consecutive years. *Id.*

NCLC is a national nonprofit with decades of experience litigating class action claims on behalf of consumers. Ex. 2, Certification of Stuart Rossman ¶ 4. NCLC regularly litigates class action cases, including class actions alleging unlawful debt collection practices.[4] *Id.* ¶ 3. Senior attorney Stuart Rossman has served as Director of Litigation for over 20 years, co-editing NCLC's Consumer Class Action treatise and coordinating NCLC's annual Consumer Class Action

---

[4] "Open Cases," NATIONAL CONSUMER LAW CENTER, https://www.nclc.org/our-work/our-services/litigation/open-cases-2/ (last visited Nov. 20, 2023).

Symposium. *Id.* ¶¶ 3–4.

JCL is a nonprofit focused on bringing class actions and other impact litigation to advance economic and social justice. Ex. 5, Certification of Ben Elga ¶ 5.  Mr. Elga of JCL graduated from Harvard in 2014, and is the founding Executive Director of JCL.  *Id.* ¶¶ 2–3.  Since opening its doors, JCL has litigated and favorably resolved a number of highly complex class actions. *Id.* ¶ 6.

Collectively, Class Counsel brings decades of experience and specialized knowledge on consumer credit matters generally, and the very specialized area of student loan litigation specifically.

### 2. History of rate approvals.

Philadelphia courts, including this Court, have found the rates of Class Counsel Flitter Milz to be reasonable, approving incremental and well-documented increases over the years. *See Hutchins v. Mountain Run Sols., LLC*, No. 20-5853, 2022 WL 17836610, at *1 (E.D. Pa. Jan. 3, 2022) (2021 rate of $315 approved for Mr. López-Jacobs); *Earley v. JMK Assocs.*, No. 18-760, 2020 WL 1875535, at *2 (E.D. Pa. Apr. 15, 2020) (2019 rates of $725 and $275 approved for Mr. Flitter and Mr. López-Jacobs, respectively).

As mentioned, the special expertise and knowledge of Class Counsel NCLC and JCL regarding the federal student loan industry was essential to the successful prosecution of this action.  Their local forum rates in Boston and New York, which are comparable to Philadelphia rates, have been consistently approved by courts. *Robinson v. National Student Clearinghouse*, No. 19-cv-10749 (D. Mass. 2019) (NCLC and JCL rates approved as part of $750,000 fee award in Fair Credit Reporting Act class case); *Peña v. Wells Fargo Bank*, No. 19-cv-04065 (N.D. Cal. 2019) (JCL rates approved as part of $500,000 fee award in class case on behalf of DACA recipients wrongfully denied credit).

### 3. Rates comport with the CLS fee survey.

The Third Circuit has held that the fee schedule published by Community Legal Services of Philadelphia ("CLS") is a useful benchmark for determining a reasonable rate. *Maldonado v. Houstoun*, 256 F.3d 181, 187-88 (3d Cir. 2001). The latest publication of the CLS schedule became effective January 19, 2023.[5] The CLS fee schedule corroborates the rates sought here.

The CLS schedule tops out at attorneys with more than 25 years of experience ($735–$850). Mr. Flitter's rate of $870 is slightly more than the specified range, but it nonetheless accurately reflects his over 40 years of experience as a practitioner, and his decades of experience teaching, lecturing on, and litigating consumer credit matters, as set forth in his Certification.

Mr. López-Jacobs' six years of class action practice on matters of consumer credit, and his one-year federal clerkship place his $360 hourly rate squarely within the CLS schedule for attorneys with six to ten years' experience ($320–$415).

Mr. Rossman has over 44 years of experience in practice, including over 20 years as the Director of Litigation at NCLC. His modest rate of $700 is *lower* than what is called for by the CLS schedule.

All of the paralegal rates sought here—which range from $210 to $230—are within the range of reasonable rates for paralegals with one to ten years of experience ($190–$240). However, it bears note that some of these paralegals have well more than ten years of experience, *e.g.* Joan Raughley (40+ years) and Ann Guenesso (30+ years). Ex. 3, Flitter Cert. ¶¶ 33–34.

---

[5] Attorney Fees, COMMUNITY LEGAL SERVICES OF PHILADELPHIA, https://clsphila.org/about-community-legal-services/attorney-fees/ (last visited Nov. 2, 2023).

### ii. Time Spent was Reasonable and Necessary

The prosecution of this case was a collaborative effort. Class Counsel consistently worked together in strategy conferences to develop litigation strategy throughout the case.[6] Collectively, Class Counsel has expended well over 1,000 hours litigating this action. Ex. 2, Rossman Certification ¶ 14. All of Class Counsel's time has been documented. Below is a summary of the time expended on various aspects of the case, along with the lodestar using Class Counsel's current, blended hourly rate, as of February 2023.

| Litigation Categories | Dates of Service | Blended Rate/hr | Time Spent | Fees Total |
|---|---|---|---|---|
| Drafting & Serving the Complaint | 12/2019-2/2020 | $544 | 102.0 | $55,513 |
| Answer | Mar 2020 | $577 | 5.4 | $3,118 |
| Discovery- Phase 1A | 3/2020-12/2020 | $591 | 313.4 | $185,349 |
| Amended Complaint | May 2020 | $697 | 34.9 | $24,323 |
| Phase 1A Depositions | 9/1/2020-1/01/21 | $459 | 114.8 | $52,636 |
| Motion for Summary Judgment/Motion to Stay Discovery/Motion to Unseal | 1/2021-3/2021 | $510 | 214.2 | $109,167 |
| Denial of Motion for Summary Judgment/Unsealing of Record/Scheduling Order | 10/2021-12/2021 | $493 | 34.5 | $17,018 |
| Class definition negotiations | Nov 2021 | $573 | 2.4 | $1,374 |
| Discovery-Phase 1B | 12/2021-6/2022 | $464 | 55.6 | $25,778 |
| Class Cert Prep | Jan 2022 | $360 | 5.0 | $1,800 |
| 30(b)(6) Smith Depo(2) | 1/2022-4/2022 | $411 | 63.4 | $26,078 |
| Revised Class definition negotiations | 4/2022-5/2022 | $477 | 11.9 | $5,678 |
| Settlement Negotiations and Mediation Class Recovery | 6/2022-10/2022 | $585 | 41.3 | $24,174 |
| Attorney Admissions & Withdrawals | *throughout* | $317 | 6.8 | $2,157 |

---

[6] *See Rode v. Dellarciprete*, 892 F.2d 1177, 1191 & n.13 (3d Cir. 1990) (entries for "conferences concerning facts, evidence, and witnesses" were sufficiently specific); *Disciullo v. D'Ambrosio Dodge, Inc.*, 2008 WL 4287319, at *5 (E.D. Pa. Sept. 18, 2008) ("Conferences between attorneys . . . are necessary, valuable, and often result in greater efficiency and less duplication of effort, thus requiring fewer hours overall.").

11

| Settlement Negotiations and Mediation Attorney Fees | 11/2022-2/2023 | $619 | 28.8 | $17,816 |
|---|---|---|---|---|
| | | | **1,034.40** | **$551,979** |

Ex. 2, Rossman Certification ¶ 15. The aggregate lodestar is presumptively reasonable. *Hahnemann Univ. Hosp.*, 514 F.3d at 310.

Nonetheless, as stated, Class Counsel has agreed to cap their attorney fees as part of the Settlement. Class Counsel's requested fees of only $190,000 is a reduction of over $360,000 of Class Counsel's lodestar. Moreover, Class Members were advised in the Class Notice of Plaintiff's request for attorney fees of $190,000, yet not a single Class Member objected to this. Ex. 7, Class Notice at p. 2. The rates charged and time expended are eminently reasonable and should be approved.

### B. Plaintiff Bodor's Service Award should be Approved.

A service or incentive award to the representative plaintiff "may be awarded for the benefit conferred on the class." *Barenbaum*, 2021 WL 120925, at *7. Such "awards are designed to compensate the named Plaintiff for risks undertaken and services provided in representing the class." *Id.* "When assessing such awards, courts examine the financial, personal, and reputational risks to the representative, his or her involvement in the litigation, and the degree to which he or she benefitted as a class member." *Id.*

Plaintiff Bodor seeks a service award of $10,000 in recognition of her valuable service to the Class throughout the four years of litigation. Ms. Bodor underwent a deposition, answered discovery, remained in consistent contact with Class Counsel, and at all times acted in the best interests of the Class. Ex. 2, Rossman Certification ¶ 17; Ex. 6, Bodor Declaration ¶¶ 8–9, 12. Ms. Bodor will appear at the final approval hearing. Ex. 6, Bodor Declaration ¶ 14.

It bears note that Ms. Bodor turned down Maximus's offer to settle her individual claim for $30,000. *Id.* at 11; Ex. 2, Rossman Certification ¶ 17. But for her steadfast focus on obtaining fair class relief, the Settlement Class would not have this opportunity to favorably settle the case on a class-wide basis.

Being the representative plaintiff came with some reputational risks to Ms. Bodor, as the case put on full display what would otherwise be private details regarding Ms. Bodor's finances and taxes, including the amount of her tax return and her experience with debt collection on her student loans. *Barenbaum*, 2021 WL 120925, at *7 (representative plaintiff "endured the reputational risks of publicly pursuing this action about his experience with debt collection—a personal financial matter that most would prefer to keep private"). As a mother juggling several obligations including her job where she is paid by the hour,[7] Ms. Bodor still made sure to set aside time to work on the case, at her own personal expense. *Id.* (recognizing the "personal cost of foregone work hours"). She stands to receive the same settlement payment as every other member of the Class, who all benefited from her service despite not having to undergo the same burdens associated with being a representative plaintiff.

Finally, the requested service award of $10,000 is comparable to awards in other FDCPA cases. *See, e.g.*, *McRobie v. Credit Prot. Ass'n*, No. 5:18-CV-00566, 2020 WL 6822970, at *2 (E.D. Pa. Nov. 20, 2020) (approving FDCPA settlement calling for $5,000 service award, $149,000 in fees, and a class fund of $40,000); *Barenbaum*, 2021 WL 120925, at *2 (approving FDCPA settlement calling for $7,800 service award, $114,000 in fees, and a class fund of $8,200).

Class Members were advised in the Class Notice of this requested $10,000 service award, yet there have been objections. Ex. 7, Class Notice at p. 2. The service award is eminently

---

[7] Ex. 6, Bodor Declaration ¶¶ 2–3.

reasonable and should be approved.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the agreed-upon award of attorney fees in the amount of $190,000, as well as Plaintiff Bodor's service award of $10,000.

Dated:  November 20, 2023                                Respectfully submitted:

/s/ Stuart T. Rossman (BBO #430640)
Stuart T. Rossman (*Pro Hac Vice*)
Alpha Taylor (*Pro Hac Vice*)
National Consumer Law Center
7 Winthrop Square, 4th Floor
Boston, MA 02110
(617) 542-8010 tel.
(617) 542-8028 fax
srossman@nclc.org
ataylor@nclc.org

Cary L. Flitter
Jody T. López-Jacobs
Flitter Milz, P.C.
450 N. Narberth Avenue
Narberth, PA 19072
(610) 822-0782 tel
(610) 667-0552 fax
cflitter@consumerslaw.com
jlopez-jacobs@consumerslaw.com

Benjamin D. Elga
JUSTICE CATALYST LAW, INC.
40 Rector Street, Floor 9
New York, NY 10006
Main: 518-732-6703
belga@justicecatalyst.org

Counsel for Plaintiff and the Class

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was served upon all counsel of record by CM/ECF electronic filing.

Date: 11/20/2023                                   */s/ Jody T. López-Jacobs*
                                                   JODY T. LÓPEZ-JACOBS
                                                   **FLITTER MILZ, P.C.**
                                                   450 N. Narberth Avenue, Suite 101
                                                   Narberth, PA 19072
                                                   (P) (610) 668-0011
                                                   (F) (610) 667-0552
                                                   Email: jlopez-jacobs@consumerslaw.com

                                                   **Attorney for Plaintiff and the Class**